**HOMART DEVELOPMENT CO., Plaintiff–Appellant,**

v.

**W.T. SIGMAN, Defendant–Appellee.**

No. 88–8140.

United States Court of Appeals, Eleventh Circuit.

April 5, 1989.

James W. Hawkins, Powell, Goldstein, Frazer & Murphy, William M. Ragland, Jr., Jerry B. Blackstock, Atlanta, Ga., for plaintiff-appellant.

John L. Watkins, Long, Aldrige and Norman, Atlanta, Ga., William G. Gainer, Northcutt, Edwards, Gainer & Moore, Conyers, Ga., for defendant-appellee.

Before HILL and FAY, Circuit Judges, and DAVIS *, District Judge.

HILL, Circuit Judge:

On September 25, 1986, Homart Development Co. (Homart) filed suit pursuant to federal diversity jurisdiction against Mr. W.T. Sigman. Homart alleged that Mr. Sigman breached a conditional option contract for the sale to Homart of real property that Mr. Sigman owns in Rockdale County, Georgia. The district court granted defendant Sigman's motion for judgment on the pleadings regarding plaintiff's action for specific performance of the conditional option contract, actual and consequential damages, and attorneys' fees. This appeal followed. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

Homart, a Delaware corporation registered to do business in Georgia, purchases and develops land for shopping malls and office complexes. Mr. Sigman, a resi-

---

* Honorable Edward B. Davis, U.S. District Judge for the Southern District of Florida, sitting by designation.

dent of Georgia, owns a parcel of approximately 75 acres of real property located in Rockdale County, Georgia. Several years ago, Homart decided to pursue the development of several regional shopping malls in the Atlanta market. Homart considered Mr. Sigman's property to be an ideal location for a regional mall in the eastern metropolitan area. On August 30, 1983, Homart and Mr. Sigman completed negotiations and entered into a conditional option contract wherein Mr. Sigman granted Homart an option to purchase his property for $1,125,000 until June 30, 1986.

In June, 1986, although negotiations for a one-year extension of the option failed, the parties agreed to extend the option through the next month. On July 28, 1986, Homart attempted to exercise its conditional option. Proper notice of the time, date, and place of closing was given to Mr. Sigman. Homart appeared at the closing with all necessary documentation and purchase proceeds, but neither Mr. Sigman nor his attorney attended to close the purchase.

Two months later, Homart filed this suit against Mr. Sigman. In four counts, Homart sought specific performance of the conditional option contract, actual and consequential damages for alleged breach of contract if specific performance were not granted, attorneys' fees, or, alternatively, recovery in *quantum meruit*. Mr. Sigman answered the complaint, counterclaimed, and filed a motion for judgment on the pleadings regarding plaintiff's claims. Plaintiff then filed a motion to dismiss defendant's counterclaims and a motion for partial summary judgment.

A federal magistrate considered the parties' various motions and recommended, in part, that defendant Sigman's motion for judgment on the pleadings be granted with respect to plaintiff's action for specific performance, actual and consequential damages, and attorneys' fees. After a *de novo* review, the district court, declaring that it was not persuaded by Homart's objections, entered an order approving and adopting the magistrate's report and recommendation. The court directed the clerk to enter judgment on Counts I, II, and III pursuant

to Fed.R.Civ.P. 54(b), and Homart appealed.

## II. DISCUSSION

Initially, we shall review the district court's decision that the terms of the conditional option contract were not sufficiently definite to support either a claim for specific performance, or alternatively, a claim for actual and consequential damages for breach of contract. Then, we shall consider the appellant's arguments regarding the appellee's alleged waiver of deficiencies concerning the contractual terms and the district court's alleged conversion of the motion on the pleadings into a motion for summary judgment.

### SPECIFIC PERFORMANCE

As the district court correctly stated, the Supreme Court of Georgia has established the following rule requiring certainty of terms before a court will decree the specific performance of a contract:

A court of equity will not decree the specific performance of a contract for the sale of land unless there is a definite and specific statement of the terms of the contract. The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance, where these are essential. Its terms must be such that neither party can reasonably misunderstand them. It would be inequitable to carry a contract into effect where the court is left to ascertain the intention of the parties by mere guess or conjecture, because it might be guilty of erroneously decreeing what the parties never intended or contemplated. *Green v. Zaring,* 222 Ga. 195, 149 S.E.2d 115, 117–118 (1966); *Williams v. Manchester Building Supply Co.,* 213 Ga. 99, 97 S.E.2d 129 (1957). The definite and specific statement of terms must be expressed by the writing itself or determined through use of a "key," a word or phrase in the writing referring to material that will make the terms definite. *Beller & Gould v. Lisenby,* 246 Ga. 15, 268 S.E.2d 611 (1980);

*Sturdivant v. Walker,* 202 Ga. 585(4), 43 S.E.2d 527 (1947); *Muller v. Cooper,* 165 Ga. 439, 141 S.E. 300 (1929).[1]

The district court decided that the terms of two of the "Additional Provisions" describing conditions to the option contract were not sufficiently definite to support a specific performance claim. The two provisions, paragraphs C.1 and C.2, read as follows:

C.1. *Development Intent.* Purchaser agrees that it will not exercise the Option unless it has at the time of such exercise a reasonable intent to develop the Property.

C.2. *Relocation of Residence.* After exercising the Option, Purchaser shall, at Purchaser's election either (i) move Seller's residence now located on the Property up to two miles and put it in the same operational and functional condition as it exists just prior to the time of the move, provided, however, that Seller's residence shall not be moved sooner than two (2) years after the Date of this Contract and not later than six months following beginning of construction, or, (ii) pay to the Seller the appraised value of the building (excluding land) at the time in question, provided, however, that if the appraised value is paid, Seller may within thirty (30) days after such payment remove all personal property, and appliances (which items shall not be included in appraised value). In addition, if Purchaser decides building is to be destroyed and Purchaser has salvaged any materials he wants then Seller shall be allowed but not obligated to thereafter, within 45 days, to wreck and/or remove any or all remaining salvageable material from the aforesaid residence. In addition, Purchaser agrees to exclude from the Property up to one and one-half acres in the Southeast corner of the Property designated by Purchaser in order that it may be used by Seller or any member of Seller's family for their home exclusively, such parcel to be ground leased by Purchaser to Seller for $1.00 per year until the first to occur of (y) December 31, 2040, or (z) one year after the land is no longer used as a residence. Seller shall have five years from the date of Closing to complete construction of residence.

■ The district court was correct in its determination that the terms of paragraph C.1 are too indefinite, thereby precluding a decree of specific performance of the conditional option contract. As the district court recognized, there are several descriptive deficiencies in the terms of paragraph C.1. First, paragraph C.1 fails to describe the type or scope of development contemplated by the parties. In *Green v. Zaring, supra,* the Supreme Court of Georgia found a contract too vague to enforce where the parties had agreed to form a corporation to develop the defendant's property "with apartment buildings and related structures." Nothing in the contract indicated what the parties intended regarding the number, size, design, or quality of the buildings and the court could not determine what the parties envisioned. In the

1. The district court and the parties throughout this case have used both the analysis that Georgia courts usually apply in considering an equitable action for specific performance and the analysis Georgia courts apply in actions at law requesting relief such as damages for breach of contract. The latter analysis, in evaluating whether uncertain terms are enforceable, may entail a utilization of a definition of "ambiguity," an application of the Georgia contract code's rules of construction (OCGA §§ 13–2–1 *et seq.*), and a consideration of whether to permit reference to parol evidence to help explain "ambiguous" terms. *See Jones v. Ely,* 95 Ga.App. 4, 96 S.E.2d 536 (1957); *Burden v. Thomas,* 104 Ga.App. 300, 121 S.E.2d 684 (1961); *Indian Trail Village v. Smith,* 139 Ga.App. 691, 229 S.E.2d 508 (1976).

When considering an equitable action for specific performance, Georgia courts normally have not implemented the analysis that discusses "ambiguity," applies the code rules of construction, and contemplates the introduction of parol evidence. Appellant cites to a case in which the Georgia Supreme Court does apply the above analysis in a suit for specific performance of an option to purchase realty. *Baker v. Jellibeans, Inc.,* 252 Ga. 458, 314 S.E.2d 874 (1984). No reason was given for the apparent departure from standard specific performance analysis, but it appears that the contract involved in *Baker* was enforceable using either analysis.

present case, paragraph C.1 does not describe the development contemplated or furnish a key that leads to a certain description of the expected development. Appellant contends that the parties never intended that paragraph C.1 describe the type or scope of development to be pursued. Rather, the appellant maintains that the parties viewed paragraph C.1 as an anti-speculation clause insuring that Homart would not simply hold onto the land as an investment. This interpretation is not clearly stated in paragraph C.1 and no key exists that would lead to a certain illustration of this suggested meaning. In fact, appellant's urging that paragraph C.1 was meant as an anti-speculation clause only supports the conclusion that the paragraph is vague and indefinite. Second, C.1 leaves uncertain whether the corporate purchaser's state of mind, required to have a "reasonable intent" to develop, is to be objectively demonstrated, or whether subjective intent is sufficient. If the purchaser's intent is to be objectively demonstrated, paragraph C.1 fails to identify, either through its language or through a key, the legal entity that would determine whether or not Homart possesses the requisite intent to develop at the time of the exercise of the option. That is, it is unclear whether the decision is to be made by an expert real estate developer, an arbitration panel, a court of competent jurisdiction, or some other entity.

Appellant concedes that the terms of paragraph C.2 are not sufficiently certain to be enforced. Rather, it argues that C.2 is severable from the option contract. Because the unenforceability of paragraph C.1 alone provides sufficient grounds to preclude a decree that the contract be specifically performed, we need not discuss whether the terms of paragraph C.2 are sufficiently definite to be enforced or whether the paragraph is severable.

## DAMAGES

■ In Count II of its complaint, Homart alleged that it would suffer actual and consequential damages if specific performance were not granted. Georgia case law holds that a contract whose terms are too indefinite and unclear to state a cause of action for specific performance cannot support an alternative cause of action for damages. *Austin v. Willis*, 229 Ga. 193, 190 S.E.2d 532 (1972); *Stribling v. Ailion*, 223 Ga. 662, 157 S.E.2d 427 (1967); *Crown Corp. v. Galanti*, 220 Ga. 660, 140 S.E.2d 898 (1965); *Hamilton v. Daniel*, 213 Ga. 650, 100 S.E.2d 730 (1957). *See also Clayton v. Deverell*, 257 Ga. 653, 362 S.E.2d 364 (1987); *Tuggle v. Wilson*, 158 Ga.App. 411, 280 S.E.2d 628 (1981); *Dangler v. Rutland*, 229 Ga. 439, 192 S.E.2d 156 (1972); *Green v. Zaring*, 222 Ga. 195, 149 S.E.2d 115 (1966). Since the contract at issue may not be specifically performed, it therefore fails to support a claim for damages.

## WAIVER OF DEFICIENCIES

■ Next, Homart maintains that the district court erred in concluding that any deficiencies in paragraphs C.1 and C.2 were not cured, ratified, or waived by appellee's post-contract conduct. Appellant specifically contends that Mr. Sigman's acceptance of periodic option payments and his attendance at rezoning hearings in conformity with paragraph C.4 raise issues as to whether Mr. Sigman waived the uncertainties of paragraphs C.1 and C.2.[2] Homart further asserts that Mr. Sigman's failure to object to its placing an adjacent parcel of property owned by a third party under option and his silence while it expended large sums of money on pre-development activities raise questions of waiver.

The appellant's recitations of fact dealing with the appellee's part performance of the contract are the only contentions worthy of discussion. As the district court declared,

**2.** Paragraph C.4 of the Additional Provisions states:

*Cooperation in Rezoning.* Although this Contract is not subject to rezoning, Seller [Sigman] agrees to cooperate with Purchaser [Homart] and support Purchaser in any rezoning of the Property by Purchaser. In particular, but without limitation, Seller agrees to sign any applications, consents or other documents required in connection with the rezoning and to appear at any public hearings to show Seller's support for the rezoning.

a party may waive his right to contest the validity of a contract where he ratifies it by accepting services provided and conducting himself according to its terms for a period of time. *Malin v. Servisco, Inc.*, 172 Ga. App. 418, 323 S.E.2d 278 (1984). However, in order for the part performance to constitute waiver of the deficiencies of the contractual terms, such performance must relate to the contested clause. *Touche Ross & Co. v. DASD Corp.*, 162 Ga.App. 438, 292 S.E.2d 84 (1982). Neither Mr. Sigman's acceptance of option payments nor his attendance at the rezoning hearings relate to contested paragraph C.1. With regard to the option payments, paragraph C.1 was not implicated until Homart attempted to exercise the option on July 28, 1986, at which time all option payments already had been received. Appellee's attendance at rezoning hearings related directly to paragraph C.4 rather than to paragraph C.1. Therefore, Mr. Sigman by his part performance did not waive the deficiencies found in paragraph C.1.

## CONVERSION

■ Homart argues that the district court, by relying on matters outside the pleadings while considering a motion for judgment on the pleadings, converted the motion brought under Rule 12(c) of the Federal Rules of Civil Procedure into a motion for summary judgment under Fed. R.Civ.P. 56.[3] *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599, 605 (11th Cir.1985); *International Association of Machinists & Aerospace Workers v. United Technologies Corp.*, 704 F.2d 569, 572 (11th Cir.1983); *Murray v. Gelderman*, 566 F.2d 1307, 1308 (5th Cir.1978). Appellant maintains that the alleged conversion constitutes reversible error. First,

Homart insists that the district court failed to give the parties ten-days notice of the conversion as required by Rule 56. *Herron v. Beck*, 693 F.2d 125, 126 (11th Cir. 1982); *Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir.1979). Second, it contends that the court, in selecting only portions of extrinsic materials to make findings of fact, ignored portions of the outside materials that would establish that genuine issues of material fact exist that compel denial of the allegedly converted motion. Specifically, Homart maintains that the affidavit of John F. Oliaro, Homart's Vice President for Regional Mall Development and author of the provisions in dispute, should have been considered by the court. Appellant insists that this affidavit would show that paragraph C.1 is not fatally indefinite.

■ We begin our analysis by noting that this case presents an unusual conversion issue. Usually, when a district court looks at matters outside the pleadings, the judge is not satisfied that the issue presented can be resolved based on the pleadings alone. However, in a specific performance action based on a contract to convey land, the contract, itself, is part of the pleadings. The party seeking to uphold the contract may urge that matters outside the pleadings ought to be considered in arriving at a judgment. To that end, such party may put extrinsic materials before the court so that it is able to see how vital it is that the materials be considered in the formation of the court's judgment. In particular, the party may wish to show how an alleged "key" in the language of the contract may lead to certainty of terms. Merely because the judge peruses the material tendered does not automatically convert a Rule 12(c) motion into a Rule 56 motion.[4] If the district court ultimately

---

**3.** Homart included the depositions of John F. Oliaro and W.T. Sigman with its brief in opposition to defendant Sigman's motion for judgment on the pleadings. Later, in its reply and supplemental brief opposing the magistrate's report and Mr. Sigman's Rule 12(c) motion, appellant submitted the affidavit of John F. Oliaro as well as numerous other documents concerning its pre-development activities. In response, Mr. Sigman made a motion to strike the affidavit of Mr. Oliaro and the other materials submitted

with the latter brief. The district court never took action on the motion to strike. Three months later, it approved and adopted the magistrate's report and recommendation that suggested that Sigman's motion for judgment on the pleadings be granted. In his report, the magistrate had supplementarily referred to the depositions of Mr. Oliaro and Mr. Sigman after basing his conclusions on the pleadings.

**4.** Federal Rule of Civil Procedure 12(c) reads:

decides that the contractual language is too indefinite and does not find a key within the contract that would permit the judgment to be made with the consideration of the outside material, the court is ruling on the pleadings.

In this case, appellant submitted depositions, an affidavit, and other matters outside the pleadings in part to support its argument that the uncertain contractual terms could be explained by reference to such extraneous materials.[5] Ultimately, however, the court found that paragraph C.1's terms were fatally uncertain, and it did not identify a key within the terms that would permit reference to matters outside the pleadings.[6] Since the contract is part of the pleadings, it follows that the court's judgment was made on the pleadings. It matters not that the court perused extraneous materials provided by appellant in support of its ultimately rejected argument that an explanatory key existed.

### ATTORNEY'S FEES

In light of all of the above, the district court properly granted appellee judgment on Homart's claim for attorneys' fees as that claim related to appellant's claims for specific performance and damages in the alternative.

AFFIRMED.

---

(c) Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

5. Homart submitted matters outside the pleadings also to bolster its argument that a genuine issue of material fact existed regarding whether indefinite contractual terms were cured, ratified or waived by Mr. Sigman's conduct. As reviewed above, appellant's waiver of deficiencies argument is meritless under Georgia law.

6. The district court did refer to extrinsic materials in discussing appellee's motion for judgment on the pleadings. However, it did not consider the outside matters in making its judgment. It only referred to the depositions as a supplement to its conclusions, based on the contract and thus on the pleadings alone, that the terms of paragraph C.1 were too uncertain to support an action for specific performance.