[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 2, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-14917
_____

D. C. Docket No. 01-00468 CV-ORL-31

TRUSTMARK INSURANCE COMPANY,

Plaintiff-Appellant,

versus

ESLU, INC., f.k.a. Excess &
Stop-Loss Underwriters, Inc.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 2, 2002)**

Before ANDERSON and MARCUS, Circuit Judges, and MIDDLEBROOKS*,
District Judge.

_____
*Honorable Donald M. Middlebrooks, U.S. District Judge for the Southern District of Florida,
sitting by designation.

ANDERSON, Circuit Judge:

This opinion considers the viability of the second of two lawsuits filed by Trustmark Insurance Company ("Trustmark") against ESLU, Inc. ("ESLU") for breach of contract. In 1994, Trustmark decided to expand its business and appoint agents to sell its insurance policies. Accordingly, that same year Trustmark and ESLU executed a contract, called the Managing General Underwriting Agreement ("MGUA"). Pursuant to the MGUA, ESLU would be Trustmark's managing general agent and would sell "excess stop loss group insurance policies." MGUA 1(a). ESLU was also to underwrite these policies using the same procedures that had been profitable for the company in the past.

The present controversy began when Trustmark determined that ESLU had incorrectly calculated the deductibles for one of Trustmark's insureds. In what we will refer to as "Trustmark I," Trustmark filed suit in September, 1999 against ESLU, claiming breach of contract, negligence and breach of fiduciary duty. Trustmark argued that ESLU breached the underwriting agreement by failing to underwrite three policies in accordance with the contract. On January 25, 2000, the trial judge set a scheduling order and the parties continued with discovery. Trustmark learned that ESLU had incorrectly calculated at least two more companies' deductibles. Accordingly, on May 29, 2000, the date which the scheduling order set as the deadline for any amendments, Trustmark amended its

complaint to add the facts relating to those two additional policies.

In March 2000, Trustmark began an audit of ESLU's work. Nine months after the amendment period had passed, and two months after the discovery period had ended, on February 27, 2001, Trustmark again moved to amend the complaint. It moved to amend that complaint to add additional counts of breach of contract relating to 42 separate insurance policies that Trustmark alleged were improperly handled by ESLU. The court refused to allow that amendment, finding that Trustmark had failed to show good cause. The court noted that Trustmark had displayed excessive dilatoriness and a lack of diligence in complying with the scheduling order. Trustmark proceeded with the original lawsuit, which ultimately terminated when the jury returned a verdict in ESLU's favor on the breach of contract claims.

Upon the conclusion of Trustmark I, Trustmark filed the instant suit, a second suit against ESLU which we will call "Trustmark II." Trustmark again alleges that ESLU had breached the MGUA, citing the 42 separate insurance policies which it had attempted to include in the first action. ESLU moved to dismiss Trustmark II pursuant to Fed. R. Civ. P. 12(b)(6), arguing that because the breach of the MGUA was the subject of Trustmark I, the doctrine of res judicata prevented Trustmark from relitigating claims which arose out of that contract.

3

When ESLU submitted its 12(b)(6) motion to dismiss Trustmark II, it attached various documents in support. Trustmark attached further documentation in its response. Without expressly excluding any of those documents, the district court dismissed the suit; Trustmark appeals.

Trustmark argues that when the district court accepted all of the documentation provided at the 12(b)(6) stage it considered matters outside the pleadings, thus converting that motion into a motion for summary judgment. Because a court converting a 12(b)(6) motion into a motion for summary judgment must give the parties 10 days notice, and Trustmark was not given that notice, Trustmark argues that the case should be reversed and remanded.

Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion. Fed. R. Civ. P. 12(b); Concordia v. Bendekovic, 693 F.2d 1073, 1075 (11th Cir. 1982). But see Homart Devel. Co. v. Sigman, 868 F.2d 1556 (11th Cir. 1989) (interpreting conversion rule in concert with Fed. R. Civ. P. 10(c) which states that documents attached to pleadings is a part thereof; thus contract was properly considered part of pleadings). When that conversion occurs, the district court must comply with the requirements of Rule 56. Jones v. Auto. Ins. Co., 917 F.2d 1528, 1532 (11th Cir. 1990). The district court is required to notify the parties that the

4

motion has been converted, and give the parties 10 days in which to supplement the record. Herron v. Beck, 693 F.2d 125, 126 (11th Cir. 1982).

This Circuit has consistently interpreted the notice rules strictly. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). On the other hand, we recognized a limited exception in Property Management & Investments, Inc. v. Lewis, 752 F.2d 599 (11th Cir. 1985). Property Management involved two lawsuits comprised of the same parties. In the first action, the Florida Comptroller's Office sued Property Management & Investments ("PMI") in Florida state court for violations of Florida securities laws. Id. at 601. That suit was settled, with both parties signing a stipulation agreement in which PMI agreed not to sue Comptroller Lewis or any of the employees of the Comptroller's Office for injuries arising out of the first lawsuit. Id. Shortly after the conclusion of the first action, however, PMI filed for bankruptcy. Id. at 602. PMI then sued Comptroller Lewis and other employees of the Comptroller's Office, claiming that they defamed PMI and used their power to destroy the company. Id. The defendants filed a 12(b)(6) motion, claiming that the stipulation agreement barred the lawsuit. Id. The defendants attached a copy of both the state order and the stipulation. Id. In response, PMI submitted a copy of the stipulation *and an additional one page addendum* that the defendants had omitted. Id. The court did not give specific notice that it was converting the motion

5

to a summary judgment motion, but clearly considered the stipulation and the addendum.  Id. at 604-05.  PMI claimed that because it was not given notice that the court had converted the motion to a summery judgment motion, the court had committed reversible error.  Even recognizing the strict interpretation afforded notice violations, after carefully reviewing the record this court determined that "all of the parties were well aware that the judge was converting this 12(b)(6) motion and that the parties made all the arguments and submitted all the documents that they would have presented had they received the notice to which they were entitled."  Id. at 605.  In a situation in which the parties fully understand the true nature of the motion and have presented all available arguments, any error in the notice afforded the parties is harmless.

The harmless error exception detailed in Property Management is a limited exception which we will not often recognize.  See, e.g., Jones, 917 F.2d at 1534-35 (refusing to apply exception because nonmovant had not proffered all evidence or made all arguments in his favor; thus, not harmless error); Donaldson v. Clark, 819 F.2d 1551, 1555 (11th Cir. 1987) (affording parties one week, rather than 10 days provided in rules,  not harmless error under Property Management).  However, we have applied the exception in those cases which we have deemed "unique."  Those cases include Peterson v. Atlanta Housing Authority, 998 F.2d 904, 913 (11th Cir.

6

1993); Denis v. Liberty Mutual Insurance Co., 791 F.2d 846, 850 (11th Cir. 1986) (concluding that when motion to reconsider filed by non-movant stated that it raised a "genuine issue of material fact," it is clear that the non-movant himself considered the motion to reconsider as converting the 12(b)(6) motion, and thus non-movant cannot contest notice when his own pleadings prove his knowledge); and Washington v. Office of Comptroller of Currency, 856 F.2d 1507, 1511 (11th Cir. 1988) (concluding that because all of the parties were aware that administrative record was necessary to determine outcome in the case, the district court's consideration of that record was harmless in "this very unique case").

Although the Property Management exception is limited, after having conducted a careful review of the record in this case, we believe that the case before us is sufficiently "unique" that the exception applies. To explain why, we turn to the rationale underlying the exception. "[T]he purpose of the rule is to notify the parties that the court may dispose of the case by summary judgment so that 'the nonmoving party will have an opportunity to marshal its resources and . . . rebut[] the motion for summary judgment with every factual and legal argument available." Denis, 791 F.2d at 850. When a party proves through its actions that it has notice of the conversion, any failure to notify the party is rightly deemed harmless. For example, in Denis v. Liberty Mutual, this Court found harmless error when in the

7

non-movant's motion to reconsider it stated that it had raised a "genuine issue of material fact." Id. Recognizing that the non-movant had set forth the legal standard for summary judgment, rather than judgment on the pleadings, the court was confident that the non-movant had treated the motion as a motion for summary judgment. Therefore, any error in not notifying the non-movant of that conversion was harmless.

Similarly, in this case, Trustmark moved for an extension of time in which to file its response to the 12(b)(6) motion, stating: "ESLU's Motion is a *comprehensive dispositive motion* seeking judgment on Trustmark's Complaint on the grounds of collateral estoppel, res judicata, and impermissible claim splitting. *Substantial legal and factual issues* are involved and require research by Trustmark's counsel, including review of pleadings, motions, and discovery in the predecessor to this case, . . . Trustmark I." 1-15 (emphasis added). As in Denis, Trustmark's statement that this was a "comprehensive dispositive motion" which required a review of both the facts and the law shows that it believed the motion to involve both legal and factual arguments. Motions under 12(b)(6) presume the facts as alleged in the complaint. Only a summary judgment motion could involve "substantial legal and factual issues."

Also significant is the fact that when ESLU filed its 12(b)(6) motion it

attached eight exhibits.[1]  When Trustmark filed its response to the 12(b)(6) motion it attached twelve exhibits, denoted as Exhibits A-L.[2]  In other words, Trustmark itself attached to its response the same kinds of information that ESLU attached to its motion.  By doing so, it was inviting the district court to consider the same, a position inconsistent with its position on appeal.

Although pressed to do so at oral argument, Trustmark has been unable to show that it would have proffered additional evidence beyond exhibits A through L which it did attach to its response in the court below.  Considering all of these factors–Trustmark's express acknowledgment that the motion was a dispositive motion involving substantial legal and factual issues about the scope of the prior litigation; the fact that Trustmark followed ESLU's lead and attached to its own response the evidence from the prior litigation that it deemed relevant; and the fact

---

[1]Those exhibits were all documents from the Trustmark I record, including the complaint, the answer and motion to dismiss, the scheduling order by the court, the motion to amend the complaint and the order permitting that amendment, the pretrial statement by the parties, the order granting ESLU final summary judgment, and the final judgment in favor of ESLU.

[2]Those exhibits included either documents from the Trustmark I record or documents relating to that litigation, including the district court's order from Trustmark I, the plaintiff's motion and amended motion for extension of discovery, the magistrate's ruling on those motions, a letter from one of the attorneys to the other, a motion to file a second amended complaint, the contract, objections to the magistrate's order denying Trustmark's motion for extended discovery and corresponding affidavits in support, and a joint pretrial statement.

that it cannot now identify any additional evidence that it would have proffered--we determine that this case is sufficiently unique that even if the district court did convert the 12(b)(6) into a motion for summary judgment any error is harmless. Thus, we need not remand this case, but instead decide the merits of the res judicata claim at this time.

Based upon the record, we find that the district court also correctly determined that the second lawsuit was barred by res judicata. A party seeking to invoke res judicata must show that the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action. In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). Neither party contests the first three elements. Instead, Trustmark contends that even though in both the first and second lawsuits it based its claim on breaches of the same contract, the lawsuits did not involve the same "causes of action" under the rule.

Claims are part of the same "cause of action" when they "arise out of the same transaction or series of transactions." Piper, 244 F.3d at 1297. Under the current analysis we make a fact-based inquiry into whether the cases are based on the same factual predicate or came from the same nucleus of operative fact. If they did, they are the "same" for the purposes of res judicata. Id. The doctrine is

concerned with the substance, and not the form, of the proceedings.  Id.  "It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."  Id. (citation omitted).  Thus, we look to the factual issues that must be resolved by the litigation and ask whether those facts arise out of the same transaction or series thereof.  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999).  In so doing we ask whether the plaintiff could, or rather should, have brought the second claim with the first lawsuit.  Id.

Now to compare Trustmark I and Trustmark II.  The parties cannot dispute that both lawsuits allege breach of the MGUA.  However, Trustmark attempts to circumvent this problem by arguing that the second lawsuit involves the *42 different policies*.  Each individual error, Trustmark claims, is separate and distinct; thus the claims are not the same, but are instead 42 separate wrongs.  Although Trustmark points out the individual errors made by ESLU, that is not dispositive.  A series of breaches of the same contract, all occurring before filing suit, should be brought in that suit.  See, e.g., Restatement (Second) of Judgments § 24 cmt. d (1982) ("When a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and

11

similarly motivated, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action."); Prime Mgmt. Co., Inc. v. Steinegger, 904 F.2d 811, 816 (2d Cir. 1990) (holding that "res judicata will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first suit; it will not, however, bar a subsequent suit for any breach that had not occurred when the first suit was brought," and citing Klein v. John Hancock Mut. Life Ins. Co., 683 F.2d 358 (11th Cir. 1982), which involved a similar ruling in the context of a prior suit ending in a settlement and release).

The similarities between the two lawsuits are clear. Both involve breaches of the same contract, committed by the same party and involving the same general type of conduct. Trustmark itself attempted to amend its complaint to add the claims to the first lawsuit. In so doing, it stated that the claims in the second complaint were "*related* to the same basic set of circumstances presented in both the initial and Amended Complaint." Trustmark also must admit that some of the same witnesses will be called to explain Trustmark II as were called in Trustmark I. In this situation, where the second lawsuit alleges a breach of the same contract that was breached in the first, by the same party, in the same general manner, those actions constitute the factual predicate, and any claims relating to that contract

should be brought in the same lawsuit.[3]

Trustmark also argues that under the operation of the delayed discovery doctrine, the claims alleged in Trustmark II could not have been brought when Trustmark I was brought because they had not yet "accrued." According to the argument, because Trustmark could not have known about the breaches of contract at the time it filed Trustmark I, it should not be barred by res judicata.

Because "[r]es judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding," relevant in this analysis is when the facts

---

[3] We recognize also that Trustmark also sued ESLU for fraud and misrepresentation, claiming that ESLU breached the Termination Amendment. The parties executed that Amendment to the MGUA in order to terminate their relationship; the decision to terminate the relationship was caused by what Trustmark believed were the repeated breaches of the MGUA by ESLU. Under the Termination Amendment, ESLU was not allowed to offer renewal coverage to employers after August 1, 1998. ESLU allegedly stated that two employers had accepted renewal coverage prior to that date so that it could receive the benefit of that renewal. According to Trustmark, ESLU had not gotten written confirmation of the renewal by those employers prior to August 1. Trustmark claims that the claims for negligent misrepresentation and fraud that are based upon the Termination Amendment should remain.

Res judicata acts as a bar "to all legal theories and claims arising out of the same operative nucleus of fact." Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356-57 (11th Cir. 1998) (quoting Manning v. City of Auburn, 953 F.2d 1355, 1358-59 (11th Cir. 1992)). We have already determined that the contract between the parties was the foundation of the factual predicate in this case. The so-called "Termination Amendment" was an amendment to that contract–not a separate contract. It determined when and how the contractual relationship would end. Thus it can fairly be said that it modified the original contractual rights of the parties, but it cannot be fairly said that it was an entirely separate contract for res judicata purposes. Accordingly, as long as the relevant claims had occurred prior to filing the first lawsuit, Trustmark should have brought the negligent misrepresentation and fraud claims at that time. Trustmark filed Trustmark I on September 22, 1999, over a year after the breach of which it now complains. The claims for fraud and negligent misrepresentation were properly barred by res judicata.

We also note that in Trustmark I, ESLU counterclaimed for breach of the Termination Amendment because it had not been compensated under that Amendment. At that time Trustmark asserted, as a defense to the counter-claim, that ESLU had not performed. Had it so desired, Trustmark clearly could have claimed a breach of the Amendment at that time. We conclude that this portion of the contract, regardless of whether it is an amendment, arises out of the same nucleus of facts as Trustmark I.

13

arose. Ragsdale, 193 F.3d at 1238. Here, the contract breaches upon which Trustmark bases its second suit occurred well before it filed the first cause of action.

Trustmark argues, however, that the delayed discovery doctrine should apply to this case. The delayed discovery rule prevents a cause of action from accruing until the plaintiff either knows or reasonably should know of the act giving rise to the cause of action. Hearndon v. Graham, 767 So. 2d 1179, 1184 (Fla. 2000) (reasoning that statutes of limitations require assertion of claims within a certain amount of time after notice has been given). The record belies Trustmark's reliance on the delayed discovery doctrine. Every alleged breach of contract that Trustmark now seeks to litigate occurred long before Trustmark I was filed. Trustmark was not obliged to wait for discovery available after filing suit, because Trustmark had a contract right to audit ESLU at any time. Even after filing suit in September 1999, and receiving the scheduling order on January 25, 2000, with its deadline date of May 29, 2000, for any amendments, Trustmark failed to complete the audit it began in March 2000 by the deadline date for amending to add the instant claims. Trustmark does not explain why it did not attempt to investigate the claims earlier or why it failed to timely complete the audit it began in March 2000. As the district court noted in ruling on the instant case, the court had concluded, in denying leave

for Trustmark to amend to add these claims in the prior litigation, that Trustmark had displayed excessive dilatoriness and lack of diligence in complying with the scheduling order in the prior litigation. This is not a situation in which plaintiff had no means of knowing that a party breached the contract. Rather, this is a situation in which the plaintiff failed to investigate its claims in a timely manner in order to present them in the first litigation.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.