Vanessa MARKS, et al., Plaintiffs,

v.

QUICKEN LOANS, INC.,
et al., Defendants.

Civil Action No. 07–0803–WS–M.

United States District Court,
S.D. Alabama,
Southern Division.

May 9, 2008.

Kenneth J. Riemer, Mobile, AL, for Plaintiffs.

Annie J. Dike, Jeffery J. Hartley, Russell Crandle Buffkin, Helmsing, Leach, Herlong, Mobile, AL, John Garland Smith, Louis Michael Calligas, Balch & Bingham, Montgomery, AL, for Defendants.

## ORDER

WILLIAM H. STEELE, District Judge.

This matter comes before the Court on defendant Quicken Loans, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (doc. 35). The Motion has been fully briefed and is ripe for disposition at this time.

### I. Background.

On March 6, 2008, plaintiffs Vanessa and Aluther Marks filed their Amended Complaint (doc. 33) purporting to assert certain federal and state-law causes of action against named defendants Quicken Loans, Inc. and Washington Mutual Home Loans, arising from defendants' alleged failure properly to service plaintiffs' real estate mortgage loan relating to plaintiffs' home in Mobile County, Alabama.

The factual allegations underlying plaintiffs' claims are straightforward. Indeed, the allegations of the Amended Complaint

that are germane to the instant Rule 12(b)(6) Motion are as follows: In December 2006 plaintiffs obtained a real estate mortgage loan from defendant Quicken, which subsequently assigned the servicing of the loan to defendant Washington Mutual on or about February 8, 2007. Pursuant to the mortgage loan agreement, plaintiffs were required to maintain homeowners' insurance on the subject property, and to make monthly payments to the loan servicer for deposit into an escrow account to assure payment of insurance premiums and other charges. The Markses did in fact maintain insurance on the property via non-party USF & G at all times relevant to these proceedings, and timely made all required periodic escrow payments to the loan servicers to maintain that insurance policy. Additionally, plaintiffs paid $738.84 to Quicken at the mortgage loan closing, that sum constituting a full year's premium payment on the USF & G policy. Quicken was to hold those funds in escrow and disburse them at the appropriate time to USF & G to effectuate the policy's renewal.

According to the Amended Complaint, the USF & G policy had a one-year term, renewable on March 31 of each year. Plaintiffs allege that "[t]he premium for renewal of the USF & G policy became due and payable beginning on or about January 25, 2007." (Amended Complaint, ¶ 10.) The Amended Complaint further alleges that, "[o]n or about January 25, 2007, Quicken received a notice from USF & G that the annual premium of $738.84 needed to renew the policy, which Quicken had collected at closing and was holding in escrow, was due and payable ... [and] that the policy would expire on March 31, 2007 if the premium was not paid." (Id., ¶ 12.) According to plaintiffs, Quicken failed to pay the USF & G premium, even though it held sufficient escrowed funds from plaintiffs to do so, prior to transferring the Markses' mortgage servicing

rights to Washington Mutual on February 8, 2007. (Id., ¶ 13.) Unfortunately, plaintiffs allege, neither defendant paid the USF & G renewal premium prior to the March 31, 2007 cutoff, resulting in the lapse of the insurance policy and ensuing damage to plaintiffs.

Based on these factual allegations, the Markses sue Quicken for violation of the Real Estate Settlement Procedures Act ("RESPA"), and specifically 12 U.S.C. § 2605(g). Plaintiffs assert that Quicken violated the statute by failing to make timely payments out of escrowed funds for the USF & G insurance policy renewal and by "otherwise failing to ensure that the policy purchased with the escrowed funds did not lapse." (Id., ¶ 22.) In addition to the RESPA claim, plaintiffs bring causes of action against Quicken for negligence and wantonness (on the theory that Quicken's failure properly to manage plaintiffs' escrowed funds was a negligent or wanton act), as well as a claim for breach of contract (alleging that Quicken's failure to make timely payments out of escrow funds for the subject insurance policy breached the terms of the loan agreement). Quicken now seeks dismissal of all claims asserted against it, pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted.

## II. Legal Standard for Rule 12(b)(6) Motion.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, — U.S. —, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). The rules of pleading require only that a complaint contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R.Civ.P. While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* — U.S. —, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also Financial Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1282 (11th Cir.2007) (explaining that "factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief") (citation omitted). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 127 S.Ct. at 2200 (quoting *Twombly,* 127 S.Ct. at 1964). Thus, the proper test is whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Sec.,* 500 F.3d at 1282–83 (citation and internal quotations omitted).

▮▮▮▮ In briefing the Rule 12(b)(6) Motion, both plaintiffs and Quicken request that the Court consider evidentiary materials outside the scope of the Amended Complaint.[1] Under Rule 12(b), Fed.R.Civ. P., whenever a defendant files a motion to dismiss for failure to state a claim upon which relief can be granted, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Id.* Thus, "[w]henever a judge considers matters outside the pleadings in a Rule 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion." *Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1267 (11th Cir.2002).[2] A court converting a Rule 12(b) motion into a Rule 56 motion in this fashion must give the parties 10 days notice of the contemplated conversion to allow them to supplement the record. *See Jones v. Automobile Ins. Co. of Hartford, Conn.,* 917 F.2d 1528, 1532 (11th Cir.1990); *Trustmark,* 299 F.3d at 1267 ("The district court is required to notify the parties that the motion has been converted, and give the parties 10 days in which to supplement the record.").[3] After careful review, the

---

**1.** In particular, Quicken would have the Court examine the mortgage loan agreement entered into between plaintiffs and Quicken, as well as the mortgage loan purchase agreement between Quicken and Washington Mutual. Contrary to Quicken's representations, however, those exhibits are not appended to its Brief (doc. 36). Meanwhile, the Markses submit copies of certain correspondence pertaining to an Alabama Department of Insurance investigation concerning the lapse of their USF & G policy. (*See* Doc. 43, at Exh. A.)

**2.** *See also Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir.2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."); *Bost v. Federal Express Corp.,* 372 F.3d 1233, 1237 (11th Cir.2004) (observing that district court was required to treat motion to dismiss as a motion for summary judgment where both court and parties relied on documents outside pleadings).

**3.** The Eleventh Circuit has applied these requirements stringently, and has insisted on scrupulous compliance by district courts. *See Jones,* 917 F.2d at 1533–35 (reversing district court for failure to comply with notice requirement, and explaining that it is of "utmost importance" that litigants be notified of transformation of motion to dismiss, and that notice requirement "serves as a valuable pro-

Court excludes those extraneous evidentiary submissions and declines to convert the Motion into a motion for summary judgment. Given the narrow, purely legal questions presented by Quicken's Motion; the tangential relevance of the proffered exhibits to those legal issues;[4] and the lack of any articulated dispute between the parties as to any fact on which those legal issues might turn, it appears both unnecessary and unhelpful to open up this case to a full-blown Rule 56 review at such an early stage of the proceedings.

## III. Analysis.

### A. RESPA Cause of Action.

As indicated, the Markses' RESPA claim against Quicken is brought pursuant to 12 U.S.C. § 2605(g), which provides as follows:

> "If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, *the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.*"

*Id.* (emphasis added). Quicken's Rule 12(b)(6) motion is predicated on its contention that the Amended Complaint fails to state a claim for violation of this section.

Quicken reasons that, even taking plaintiffs' allegations at face value, it was not required to make the escrow payment to USF & G prior to its February 8, 2007 transfer of mortgage servicing responsibilities to defendant Washington Mutual, because that payment was not due until March 31, 2007, more than seven weeks after Quicken's mortgage servicing responsibilities on the Markses' loan had terminated. By contrast, plaintiffs argue that the USF & G payment "became due" on January 25, 2007, while Quicken was still servicing their loan, because that was when Quicken received notice from USF & G that plaintiffs' policy would lapse unless the annual premium were paid on or before March 31, 2007. Plaintiffs further argue that the duties imposed on loan servicers by § 2605(g) extend beyond the mere act of writing a check to the insurance company, but also encompass an obligation to pass along information concerning the payment due date to the new loan servicer. Each of these theories will be considered in turn.

 With regard to whether RESPA obliged Quicken to pay the USF & G insurance bill between January 25, 2007 (the date on which the notice of renewal was received) and February 8, 2007 (the date on which Quicken assigned the Markses' loan to Washington Mutual), the parties' arguments hinge on the meaning of the statutory phrase "in a timely manner as such payments become due." Did the USF & G bill "become due" for RES-

cedural safeguard"); *Trustmark,* 299 F.3d at 1267 ("This Circuit has consistently interpreted the notice rules strictly.").

4. For example, plaintiffs' exhibits merely show that the Alabama Department of Insurance concluded that Quicken had made an error concerning the insurance renewal. Of course, that determination is neither binding on this Court nor necessarily indicative of any viable legal theories that the Markses may be able to pursue. Likewise, although Quicken failed to submit its cited exhibits, those documents would evidently demonstrate only the contractual arrangements between Quicken and Washington Mutual relating to the payment of escrowed funds, as well as the agreement between the Markses and Quicken pursuant to which Quicken was authorized to assign the loan to a third party. None of these facts for which the parties cite these exhibits are necessary or even particularly helpful in resolving the legal questions posed by the Rule 12(b)(6) Motion.

PA purposes when it was received by Quicken on January 25, 2007, or did it not become due until the payment deadline of March 31, 2007, which was long after Quicken's loan service obligations had ceased? Neither the parties' briefs nor the Court's own research has disclosed case law definitively answering this question. That said, one district court construing RESPA opined that "§ 2605's text suggests that the borrower's cause of action does not accrue ... until payments are actually untimely. Put differently, it does not appear that the statute regulates practices that may (or even are likely to) result in untimely payments; instead, it seemingly penalizes the untimely payments themselves." *Hyderi v. Washington Mut. Bank, FA,* 235 F.R.D. 390, 400 (N.D.Ill. 2006).[5]

The parties in this case, as well as the *Hyderi* court and the Eleventh Circuit, all recognize that 24 C.F.R. § 3500.17(k)(1), an interpretive regulation promulgated by the Secretary of Housing and Urban Development, is useful in construing § 2605(g). *See Hardy v. Regions Mortg., Inc.,* 449 F.3d 1357, 1360 n. 1 (11th Cir.2006)("Notably, § 3500.17(k) addresses the timing of escrow account payments as set out in RESPA § 6(g)."); *Hyderi,* 235 F.R.D. at 399 (examining § 3500.17(k) to ascertain elements of proof in a § 2605(g) claim). This regulation provides as follows: "If the terms of any federally relat-

ed mortgage loan require the borrower to make payments to an escrow account, the servicer ***must pay the disbursements in a timely manner, that is, on or before the deadline to avoid a penalty,*** as long as the borrower's payment is not more than 30 days overdue." 24 C.F.R. § 3500.17(k)(1) (emphasis added). Reading § 2605(g) and § 3500.17(k)(1) together, the *Hyderi* court indicated that, in order to prevail on a § 2605(g) claim, a plaintiff would need to prove, *inter alia,* that "the servicer failed to make such payments in a timely manner, *i.e.* before the deadline to avoid a penalty and before the payment was 30 days overdue." 235 F.R.D. at 399.

▮ The plain language of both the statute and regulation support this construction. On its face, § 2605(g) requires loan servicers to make payments from the escrow account "in a timely manner as such payments become due." 12 U.S.C. § 2605(g). In § 3500.17(k), HUD clarifies the phrase "in a timely manner" as meaning "on or before the deadline to avoid a penalty." 24 C.F.R. § 3500.17(k)(1). In light of this language, the Court concludes that RESPA does not obligate a loan servicer to make payments from a borrower's escrow account immediately when an insurance renewal bill is received; rather, the loan servicer need only make such payment in a timely manner, that is, before the insurer-imposed deadline to avoid a penalty.[6] In this case, the well-pleaded

---

**5.** That said, the district court took care to issue certain caveats to its pronouncement as to this section's meaning. In that regard, *Hyderi* characterized § 2605(g) as "a seldom-invoked provision of RESPA" and emphasized that "the Court does not purport to issue any definitive ruling on the meaning of RESPA Section 2605(g)." *Id.* at 400–01. In light of this equivocation, the Court does not blindly adhere to *Hyderi,* for fear of ascribing greater import to that decision's reading of § 2605(g) than its author intended.

**6.** In addition to comporting with both the RESPA statutory language and the HUD in-

terpretative regulation, this standard is eminently sensible. It would be unduly onerous to loan servicers—and would confer negligible benefit on borrowers—for RESPA to obligate a loan servicer to pay any bills for insurance, property taxes, and the like out of escrow instantly upon receipt. To hold otherwise would be to enable borrowers to sue their loan servicers for not making payments out of escrow weeks or even months before the deadline set by the insurer, property tax office, etc. for receipt of those funds. A statutory scheme that allowed such claims would advance no substantial remedial pur-

factual allegations of the Amended Complaint reflect that, while USF & G sent Quicken a renewal notice for the Markses' insurance policy on or about January 25, 2007, that notice specified that no penalty would accrue until March 31, 2007, at which time the policy would lapse if the renewal premium had not been paid. For purposes of establishing a RESPA claim under § 2605(g), then, the Markses must show that their loan servicer failed to pay the USF & G renewal premium on or before March 31, 2007. But the Amended Complaint also reflects that Quicken assigned the servicing of plaintiffs' loan to Washington Mutual on February 8, 2007, some 51 days before the payment deadline to USF & G. As a matter of law, Quicken did not violate § 2605(g) by failing to make the USF & G payment from plaintiffs' escrow account prior to February 8, 2007. As of that date, the deadline for payment had not been reached, so the payment was not untimely and no RESPA violation could have occurred. Of course, after February 8, 2007, Quicken was no longer a loan servicer on the Markses' mortgage loan, and was therefore no longer subject to the requirements of § 2605(g) with respect to that loan. Thus, the factual allegations of the Amended Complaint unequivocally bar plaintiffs' RESPA cause of action against Quicken because nothing in § 2605(g) obliged defendant to pay the USF & G insurance bill (which was not due until March 31, 2007) prior to transferring loan service responsibilities to Washington Mutual on February 8, 2007.[7]

Faced with this inexorable reasoning, the Markses make no legal argument that § 3500.17(k) should not be followed. They identify no case law or other authority to support an alternative interpretation of § 2605(g) that might sweep Quicken within its ambit. Instead, plaintiffs make a sleight-of-hand argument that RESPA should be construed broadly in light of its fundamental purpose to protect consumers. On that basis, plaintiffs assert, § 2605(g) "must include a duty by the transferring servicer to either pay the bill while it is payable or, if not, to see that information is provided to the new servicer and payee so that payment will be made before the deadline." (Plaintiffs' Brief (doc. 43), at 6.) No statutory language or other authority is cited for this startling proposition.[8] Thus, plaintiffs would appar-

---

pose, but would merely facilitate harassing lawsuits by borrowers against their loan servicers. Nothing in the text of § 2605(g) suggests that Congress intended such a perverse and counterintuitive result. Rather, as HUD's regulation confirms, § 2605(g) reflects a Congressional intent merely to protect borrowers from penalties incurred when their loan servicers "drop the ball" by failing to make payments out of escrow before a deadline imposed by the insurer, tax office or the like.

7. To be sure, plaintiffs may have a viable § 2605(g) cause of action against Washington Mutual, inasmuch as the Amended Complaint reflects that (a) Washington Mutual was the loan servicer as of the USF & G payment deadline, and (b) Washington Mutual failed to make the requisite payment out of the Markses' escrow account prior to that deadline. Plaintiffs have in fact asserted a RESPA § 2605(g) claim against Washington Mutual, and that claim will proceed, notwithstanding the dismissal of plaintiffs' parallel, overreaching RESPA cause of action against Quicken.

8. At best, the Markses offer a weak argument that the phrase "become due" in § 2605(g) supports such a reading of the statute. But plaintiffs stretch that language beyond all recognition by contending that the USF & G insurance renewal payment "became due" some seven weeks before the deadline for making such a payment. More generally, nothing in § 2605(g) can reasonably be read as supporting plaintiffs' position that Quicken was under a statutory obligation to furnish certain information about the USF & G bill and the assignment of the loan to both Washington Mutual and USF & G. Perhaps such an obligation exists elsewhere in the RESPA statutory scheme, but it unquestionably cannot be found in § 2605(g), which is the sole well-

ently have this Court cut from whole cloth a brand-new set of RESPA obligations on transferring loan servicers either to pay bills early or to provide certain information to the transferee loan servicer and payee at the time of transfer. Section 2605(g) cannot reasonably be read as imposing such a duty on loan servicers. Moreover, it would be improper for this Court to engraft new *ad hoc* provisions onto RESPA creating new obligations for loan servicers that plaintiffs think would promote the act's consumer protection objectives, where nothing in the statute or interpretive regulations can reasonably be read as creating any such obligations. The Court therefore rejects plaintiff's invitation to amend RESPA by judicial fiat.[9] *See generally Harris v. Garner,* 216 F.3d 970, 976 (11th Cir.2000) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it.").

For all of the foregoing reasons, the Court finds that the Markses' RESPA claim against Quicken under § 2605(g) is not viable, as a matter of law, inasmuch as it is unequivocally foreclosed by the plain factual allegations of the Amended Complaint. Accordingly, Quicken's Motion to Dismiss is **granted** with respect to the RESPA claim in the Amended Complaint,

and that cause of action (with respect to Quicken only) is **dismissed.**

### B. Negligence/Wantonness Claims.

As mentioned *supra,* the Markses also bring state-law causes of action against Quicken for negligence and wantonness, on the theory that Quicken's failure properly to manage plaintiffs' escrowed funds was negligent and wanton. The Amended Complaint makes clear that Quicken's failure timely to pay USF & G insurance premiums out of said funds is merely one component of the alleged negligent/wanton management of the escrowed funds. Quicken seeks dismissal of those claims on the ground that it did not owe any duty to plaintiff.

 It is black-letter law that duty and breach of duty are fundamental elements of a negligence cause of action in Alabama. *See, e.g., S.B. v. Saint James School,* 959 So.2d 72, 97 (Ala.2006) (to establish a negligence claim, plaintiff must prove duty to a foreseeable plaintiff, breach of that duty, proximate causation, and damage or injury); *Thompson v. Mindis Metals, Inc.,* 692 So.2d 805, 807 (Ala.1997) ("It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty.") (citation omitted). "The existence of a duty is determined by a

---

spring of the Markses' RESPA cause of action.

9. Besides, plaintiffs' equitable arguments overlook the key point that, even in a world in which mortgage-servicing duties bounce from provider to provider over the life of a loan, RESPA unquestionably does create liability and a remedy when a loan service provider fails to make payments from an escrow account in a timely manner. That liability accrues to the service provider who was responsible for the loan at the time the payment became due (*i.e.,* on the payment deadline established by the payee, after which time the borrower is penalized). Thus, contrary to the

Markses' suggestion, a borrower whose insurance renewal premium slips through the cracks during a transfer of mortgage servicing obligations is not deprived of a remedy; rather, § 2605(g) authorizes the borrower to bring a civil action against the transferee service provider for allowing the lapse/penalty to occur. The Markses have done just that by suing Washington Mutual for failure to make the payment under § 2605(g). Plaintiffs have a remedy, and their attempt to bring a § 2605(g) claim against Quicken is simply an attempt to replicate that remedy against a second defendant. Nothing in RESPA or the sound policy judgments underlying same would compel or endorse such duplication.

number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened.... The key factor is whether the injury was foreseeable by the defendant." *Pritchett v. ICN Medical Alliance, Inc.*, 938 So.2d 933, 937 (Ala.2006) (citation omitted). Public policy and social considerations may also weigh in that determination. *See, e.g., DiBiasi v. Joe Wheeler Elec. Membership Corp.*, —— So.2d ——, ——, 2008 WL 110451, *5 (Ala. Jan. 10, 2008).[10]

[8] Quicken's principal argument is that it could not have owed a duty to the Markses to pay the insurance premiums out of their escrow account by the March 31, 2007 deadline because it had effectuated a transfer of all of its interests in the loan seven weeks earlier. According to Quicken, then, it had no duty to pay the plaintiffs' renewal premium in late March because it had surrendered all control and custody over their escrowed funds well before that time. In so arguing, however, Quicken reads the Markses' negligence and wantonness claims too narrowly. Those claims are not framed solely in terms of Quicken's failure to pay the USF & G premium, but rather are phrased as negligence in the "management of the escrowed funds," and wantonness in their "failure to properly manage the escrowed funds." (Amended Complaint, ¶¶ 24, 26.) Such descriptors reasonably encompass Quicken's alleged failure to take affirmative steps at the time of the loan transfer to ensure that both USF & G and Washington Mutual were apprised of the payment obligation and the transfer in loan service responsibilities. Stated differently, plaintiffs are asserting that Quicken owed them a duty of due care either (a) to pay the USF & G renewal premium prior to the transfer; or (b) to take steps to ensure that Washington Mutual knew about the existence of that payment obligation, and that USF & G knew about the loan transfer to Washington Mutual, so that the renewal payment would not be overlooked in the shuffle of the transfer process. The well-pleaded factual allegations support the existence of such a duty of care for Quicken under these circumstances. Prior to February 8, 2007, Quicken was responsible for administering the Markses' escrow account, including receiving plaintiffs' monthly payments, crediting those payments into that account, receiving billing statements from insurers and property tax authorities, and paying such bills out of the plaintiffs' escrow account in a timely manner. If, as plaintiffs allege, Quicken received the USF & G bill before the transfer, failed to pay the USF & G bill prior to said transfer, and neglected to notify USF & G of the new loan servicer or to notify Washington Mutual of the existence of the USF & G bill, then it was entirely foreseeable that harm could befall plaintiffs. More specifically, it was foreseeable that if Quicken failed to direct USF & G to Washington Mutual, and that if Quicken likewise failed to tell Washington Mutual about the insurance renewal premium, then the USF & G bill might not be paid and plaintiffs' insurance coverage might lapse, leaving their home unprotected and vulnerable to harm. Under straightforward application of the Alabama legal test for duty, then, the Court finds that plaintiffs have adequately alleged facts showing the nature of Quicken's activities, the relationship between Quicken and plaintiffs (and plain-

---

**10.** Under Alabama law, "[a] legal duty arises either from the common law or from a statute." *Thompson*, 692 So.2d at 807. Therefore, the failure of plaintiffs' RESPA claim to state a legally viable cause of action against Quicken is not, in and of itself, dispositive of the question of whether Quicken was subject to a duty that might support negligence/wantonness theories.

tiffs' dependence on Quicken to manage escrow payments in a responsible and diligent manner), and foreseeability of harm that would support the existence of a duty of care by Quicken. On that basis, the Motion to Dismiss is **denied** with respect to the negligence and wantonness causes of action.[11]

### C. Breach of Contract Claim.

Finally, plaintiffs have asserted a breach of contract claim against Quicken. According to the Amended Complaint, Quicken entered into a loan agreement with plaintiffs pursuant to which it "was obligated to timely make payments out of the escrowed funds ... as those premiums became due." (Amended Complaint, ¶ 29.) The Amended Complaint further alleges that Quicken breached its loan agreement with the Markses "by failing to make the premium payments necessary to renew the USF & G [policy]." (Amended Complaint, ¶ 30.) As discussed at length in Section III.A., *supra*, the USF & G premium did not become due until March 31, 2007, by which time Quicken no longer had any responsibility (contractual or otherwise) to make payments out of the Markses' escrowed funds. Although plaintiffs argue that the loan agreement obliged Quicken to make payments from plaintiffs' escrow account no later than the time specified by RESPA, the Court has already found that Quicken did not breach any obligation under RESPA to make such payments in a timely manner. Plaintiffs cannot bootstrap a breach of contract claim onto their

unsuccessful RESPA cause of action because both claims suffer from the same fundamental flaws. Inasmuch as plaintiffs concede that Quicken was not responsible for paying their USF & G renewal premium as of its March 31, 2007 due date, they cannot predicate a breach of contract claim on Quicken's failure to pay that amount weeks ahead of time. Simply put, nothing in the loan agreement required Quicken to pay off the USF & G statement antecedent to assigning the loan to Washington Mutual. Similarly, while plaintiffs reiterate their argument that Quicken should have taken steps to provide information to the new loan servicer and payee at the time of the transfer, they identify no aspect of the loan agreement that would have required Quicken to do so.

In short, the Amended Complaint fails to state a viable claim for breach of contract because the Markses do not identify any act or omission of Quicken that was at odds with the terms of the subject loan agreement. The Motion to Dismiss is therefore **granted** with respect to the breach of contract cause of action against Quicken.

### IV. Conclusion.

For all of the foregoing reasons, Quicken's Motion to Dismiss (doc. 35) is **granted in part,** and **denied in part.** The Motion is **granted** with respect to the RESPA and breach of contract causes of action, and both of those claims are **dismissed** as to Quicken. The Motion is **denied** with re-

---

11. In so ruling, the Court rejects Quicken's position that "[t]he Plaintiffs' ever-shifting argument in this regard demonstrates the tenuous nature of this argument." (Reply Brief (doc. 44), at 3.) Plaintiffs' negligence and wantonness claims, and the theories supporting same, have certainly evolved during the pendency of this litigation; however, such evolution is not, in and of itself, indicative of weakness. Plaintiffs filed an Amended Com-

plaint as of right. Part and parcel of that amendment was a revision of their negligence and wantonness claims. That plaintiffs' argument with respect to these causes of action in the Amended Complaint is not identical to that presented in briefing the now-superseded motion to dismiss pertaining to the original Complaint is not symptomatic of any infirmity in plaintiffs' present stance.

spect to the negligence and wantonness causes of action. Quicken is ordered to file an answer to the Amended Complaint on or before **May 19, 2008.**