United States Court of Appeals,

Eleventh Circuit.

No. 95-4354.

Robert C. SEWELL, Sr., Plaintiff-Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Nora A. Barnes, Defendants-Appellees.

Sept. 13, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-8208-CIV-KLR), Kenneth L. Ryskamp, Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

BRIGHT, Circuit Judge:

In late 1993, Robert Clayton Sewell, Sr., submitted claims for arbitration to the National Association of Securities Dealers, Inc. (NASD) against his financial broker Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) and its agent Nora A. Barnes (Barnes). These claims included fraud and mismanagement of his account by the brokerage company. Merrill Lynch never responded in any way or submitted its defenses to arbitration, but instead petitioned a New York state court for a judgment permanently staying as ineligible for arbitration Sewell's claims. The New York state court entered a default judgment against Sewell after he failed to appear. Sewell then brought essentially the same claims of fraud and mismanagement in Florida state court. Merrill Lynch removed the case to federal court in the Southern District of

---

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Florida.  Determining that Sewell's claims were barred by the doctrine of *res judicata,* the district court granted summary judgment of dismissal in favor of Merrill Lynch.  Sewell appeals. We conclude Sewell's claims are not barred by *res judicata* and reverse and remand to the district court for further proceedings.

## I. BACKGROUND

In December 1984, Sewell sold his farm for approximately $806,000 and opened a cash management account with Merrill Lynch. Barnes had encountered Sewell at a financial seminar sponsored by Merrill Lynch and became his financial consultant.  A document which Merrill Lynch gave Sewell stated that Sewell's investment objective was "longterm" "income" from "good quality" investments. Although Merrill Lynch alleges that Sewell entered into a customer agreement with them at the time he opened his cash management account, Sewell filed an affidavit stating that he does not remember signing any such document, and the company acknowledges it has been unable to locate a signed customer agreement.  Merrill Lynch alleges that the customer agreement provided that any controversies arising as a result of the business relationship between Sewell and Merrill Lynch must be submitted to arbitration.[1]

---

[1]Merrill Lynch alleges the document read in part:

> Except to the extent that controversies involving claims arising under the Federal securities laws may be litigated, it is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect.

In June 1993, Sewell voluntarily commenced NASD arbitration proceedings against Merrill Lynch and Barnes, alleging claims based on fraud, breach of fiduciary duty, negligent supervision, and for an accounting, resulting from Sewell's investment in several limited partnerships between 1985 and 1987. Along with his claim statement, Sewell filed a submission agreement which stated that "[t]he undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim ... to arbitration in accordance with the Constitution, Bylaws, Rules, Regulations and/or Code of Arbitration Procedure of the [NASD]."

Merrill Lynch did not sign the submission agreement or appear in any arbitration proceedings with the NASD. Instead as we have observed, Merrill Lynch brought suit in the Supreme Court of New York in February 1994. Merrill Lynch sought to stay the NASD arbitration, arguing Sewell's claims did not qualify for arbitration under the NASD Code of Arbitration § 15. Section 15 provides that no dispute, claim or controversy shall be eligible for submission to arbitration under the code where six years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. Merrill Lynch attached a standard customer agreement to its petition, and a 1994 affidavit from a former administrative manager who attested that customer agreements are mandatory at Merrill Lynch for any person opening an account and that he recalled seeing copies of the customer and cash management account agreements executed by Sewell.

Merrill Lynch asked the New York court to enter judgment permanently staying and dismissing Sewell's "untimely" claims.

Merrill Lynch cited numerous New York and federal court decisions holding that section 15 is a "jurisdictional eligibility requirement," rather than a limitations period, which must be measured from the date of the claimant's investment, and cannot be tolled by allegations of fraudulent concealment. *See Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 512-14 (7th Cir.1992); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,* 62 F.3d 381, 383-84 (11th Cir.1995) (section 15 is substantive jurisdictional eligibility requirement).

Sewell did not appear in the case because he agreed that section 15 would preclude him from arbitrating his claims. In March 1994, the New York state court entered a one-page default judgment in favor of Merrill Lynch. The order granted Merrill Lynch's petition "on default permanently staying arbitration commenced by respondent against petitioner."

Sewell immediately filed a complaint in Florida state court. He alleged that after opening an account, Barnes recommended and sold Sewell approximately $450,000 in ML Media Partners LP and Delphi Film Associates IV LP, two non-liquid communications or entertainment industry companies with no real secondary market. He alleged Barnes began placing his account on margin by causing Merrill Lynch to loan him money using as collateral the securities and money in his account and effecting trades without his knowledge or consent. This process allowed Barnes and Merrill Lynch to generate more commissions in trading activity as the amount of money available had increased by the amount of money Merrill Lynch had loaned Sewell. Sewell alleged these actions were taken at a

time when Barnes and Merrill Lynch knew that Sewell's judgment was impaired and he was suffering from alcoholism and the resultant mental and physical difficulties.[2]

Sewell claimed that Merrill Lynch and Barnes made false representations regarding the limited partnership interests as to their value and risk, mailed to him false monthly statements concerning their value, and effected excessive transactions in his account for the purpose of generating commissions. He claimed that Merrill Lynch and Barnes defrauded and breached their fiduciary duty to him under Florida state law, that Merrill Lynch was negligent in supervising and retaining Barnes, and that their statements and actions constituted an "enterprise" under Florida law. He asked for damages and an accounting.

On removal of the case to federal district court, Merrill Lynch moved to dismiss Sewell's claims and, alternatively, for summary judgment. Merrill Lynch and Barnes contended that Sewell's action was barred because 1) Sewell's sole remedy was arbitration and section 15 barred his claims from arbitration, and 2) the ruling of the New York court acted as *res judicata* and precluded Sewell from litigating his claims in Florida. They attached documents from the proceeding, particularly the affidavit filed in that case suggesting that Sewell must have signed a customer agreement limiting his remedy to arbitration. Sewell responded by

---

[2]In fact, Barnes testified in Sewell's state mental competency proceeding in 1988 that when she spoke with Sewell over the telephone his speech was slurred, he was unable to answer simple questions such as where he was and what day it was, and he was unable to recall recent disbursements from his account.

filing an affidavit stating that he did not recall ever signing such a document.

After conducting a hearing, the district court agreed that Sewell's claims were barred by the New York court's ruling under the doctrine of *res judicata.* The district court noted default judgments are to be given the full preclusive effect under Florida law, citing *In re Greene,* 150 B.R. 282, 287 (Bankr.S.D.Fla.1993) and *In re Arguez,* 134 B.R. 55, 58 (Bankr.S.D.Fla.1991). The district court concluded that although the New York court did not reach the merits of the case, the effect of the default judgment barred Sewell's claims based on the arbitration agreement referred to by Merrill Lynch in the New York case.

Apparently referring to the disputed customer agreement, the court determined the "arbitration agreement" mandated that Sewell submit his claims against the defendants to arbitration—claims nonetheless precluded from arbitration by section 15 of the NASD Code of Procedure. The court concluded Sewell could have litigated his claims in New York, but chose to ignore the proceeding. Thus the default precluded him from relitigating his claims in Florida courts. In light of its holding that Sewell's claims were barred under the doctrine of *res judicata,* the district court concluded it did not have to determine whether Sewell actually entered into an arbitration agreement with Merrill Lynch in the customer agreement. Sewell appeals. We reverse.

## II. DISCUSSION

The application of *res judicata* principles to Sewell's claims constitutes a pure question of law which this court reviews *de*

*novo.  Aquatherm Indus., Inc. v. Florida Power & Light Co.,* 84 F.3d 1388, 1391 (11th Cir.1996).  The term "*res judicata* " has been used to refer to both claim preclusion and to issue preclusion, although the term is more often synonymous with claim preclusion rather than issue preclusion or collateral estoppel.  *See id.* at 1391 n. 1.[3] This case concerns both claim and issue preclusion.  Merrill Lynch argues 1) that principles of *res judicata* preclude Sewell's claims, and 2) that the New York state court judgment precludes litigation of the issue of whether Sewell signed a customer agreement.  We disagree on both counts.

First, under Florida law, *res judicata* bars a second suit when a court of competent jurisdiction has entered final judgment in the first suit and the following four conditions are met:

> identity of the thing sued for;  identity of the cause of action;  identity of the parties;  [and] identity of the quality in the person for or against whom the claim is made.

*Aquatherm Indus., Inc.,* 84 F.3d at 1394 (citing *Albrecht v. State,* 444 So.2d 8, 12 (Fla.1984)).  Default judgments may constitute *res judicata* for purposes of both claim and issue preclusion.  *See In re Bush,* 62 F.3d 1319, 1322-25 (11th Cir.1995).

However, "ordinarily a judgment dismissing an action or

---

[3]  Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.  Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

otherwise denying relief for want of jurisdiction, venue, or related reasons does not preclude a subsequent action in a court of competent jurisdiction on the merits of the cause of action originally involved."  1B James W. Moore, et al., *Moore's Federal Practice* ¶ 0.405[5] (2d ed. 1996);  *see also American Nat'l Bank v. FDIC,* 710 F.2d 1528, 1535-36 (11th Cir.1983) (determining previous action dismissed for want of subject matter jurisdiction had no *res judicata* effect).  If the court in which an action is brought has no jurisdiction of the subject matter, the suit must be dismissed; "[i]n such cases, the dismissal is not a determination of the claim, but rather a refusal to hear it, and the plaintiff is free to pursue it in an appropriate forum." 1B  *Moore's Federal Practice, supra* at ¶ 0.409[1.-2].

As Merrill Lynch noted in its pleadings, section 15 of the NASD Code is a "jurisdictional eligibility requirement" which precludes Sewell from arbitrating his claims with the NASD.  The New York state court did not adjudicate the merits however:  it simply dismissed and stayed the claims Sewell had submitted to arbitration because the NASD had no jurisdiction over them.  In such a case, where the court found only that the NASD lacked jurisdiction over Sewell's claims, the doctrine of *res judicata* would not bar Sewell from bringing the claims in Florida court.[4]

Second, the issue of whether Sewell signed a customer

---

[4]The United States Supreme Court "has interpreted the phrase "lack of jurisdiction' broadly to include matters such as preconditions to suit and other reasons not addressing the substantive merits of the controversy."  1B *Moore's Federal Practice, supra* at ¶ 0.409[1.-2] (citing *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961)).

agreement is not settled or precluded by the New York state court judgment. Although Merrill Lynch pleaded the existence of such an agreement in New York state court, that issue was unnecessary to the court's determination that section 15 barred Sewell's claims from arbitration as untimely. The issue before the New York court was whether Sewell *could* proceed in arbitration, rather than whether Sewell was *required* to proceed in arbitration. Sewell could have presented his claims for arbitration either under a customer agreement providing for doing so or under general NASD Bylaws which require member firms such as Merrill Lynch to arbitrate if so requested by a customer. Sewell's arbitration pleadings did not state under which circumstance he was voluntarily bringing his action.

The existence of a customer agreement thus was immaterial and unnecessary to the issues determined by the New York state court judgment. *See Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am.,* 32 F.3d 528, 532 (11th Cir.1994) (in Eleventh Circuit, collateral estoppel applies where issue at stake identical to issue alleged in prior litigation, issue actually litigated in prior litigation, and determination of issue in prior litigation critical and necessary part of judgment in earlier action), *cert. denied,* --- U.S. ----, 116 S.Ct. 702, 133 L.Ed.2d 659 (1996); *Parker v. McKeithen,* 488 F.2d 553, 557 (5th Cir.1974) (well settled law establishes that fact decided in earlier suit is conclusively established between parties provided it was necessary to result in first suit); *see also In re Arguez,* 134 B.R. 55, 58 (Bankr.S.D.Fla.1991) (in Florida, default judgment conclusively

establishes between parties truth of all *material* allegations in complaint in first action and every fact *necessary* to uphold default judgment) (emphasis added). Because the existence of a customer agreement between the parties did not necessitate a determination in the New York judgment, the district court erred in concluding that *res judicata* precludes Sewell from disputing this issue.

Although Merrill Lynch alleges that Sewell signed a customer agreement providing for arbitration as an exclusive remedy, Merrill Lynch cannot produce such a document, and Sewell disputes the existence of such a document. Sewell's submission agreement to the NASD did not mandate that Sewell limit himself to arbitration as an exclusive remedy, and in any event, Merrill Lynch's necessary signature on the agreement was never obtained. *See* 1B *Moore's Federal Practice, supra* at ¶ 0.405[7] ("when prior unsuccessful litigation has established that one remedy is unavailable, a litigant is not always precluded by the mistaken choice from invoking an appropriate remedy"); *Cf. Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 167-68 (D.C.Cir.1981) (determining party did not waive or forfeit right to judicial consideration of arbitrability by submitting question initially to arbitrator). Thus, there appears to be no reason Sewell cannot proceed with his claims against Merrill Lynch in Florida courts. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 383 (11th Cir.1995) (courts will not require parties to arbitrate if they have not agreed to do so); 1B *Moore's Federal Practice, supra* at ¶ 0.405[1] (although judgment merely adjudging remedy to be barred

may operate as judgment in bar in forum that rendered it, it will not have such operative effect in another forum whose remedial law authorizes recovery).

The cases cited by Merrill Lynch in support of its contention that Sewell's claims are barred are inapposite because in each case a customer agreement or submission agreement existed providing for arbitration as an exclusive remedy.  *See C.D. Anderson & Co. v. Lemos,* 832 F.2d 1097, 1098-99 (9th Cir.1987);  *Calabria v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*   855 F.Supp. 172, 173-76 (N.D.Tex.1994);  *Castellano v. Prudential-Bache Secs., Inc.,* [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,321, 1990 WL 87575 (June 19, 1990).

## III. CONCLUSION

We conclude the district court erred in determining that principles of *res judicata* barred Sewell's claims.  The issue of whether a customer agreement exists barring litigation in favor of arbitration remains for determination, together with other matters, in the present litigation.

Accordingly, this case is REVERSED and REMANDED to the district court for further proceedings.