[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**APRIL 3, 2003**
**THOMAS K. KAHN**
**CLERK**

No. 02-13767

_____

D. C. Docket No. 02-60194-CV-WMH

MANUEL DAVILA,

Plaintiff-Appellant,

versus

DELTA AIR LINES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 3, 2003)**

Before HULL, MARCUS and FARRIS[*], Circuit Judges.

MARCUS, Circuit Judge:

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Manuel Davila appeals the district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of his claims sounding in breach of contract and an alleged violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. On appeal, Davila argues that the district court erred by holding that his claims are barred under the doctrine of res judicata. Delta Air Lines, Inc. ("Delta") defends the district court's application of res judicata, and also argues that Davila's breach of contract claim is preempted by the Railway Labor Act, 45 U.S.C. § 151 et seq., and that both of his claims are untimely.

We review de novo the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). Next Century Communications Corp. v. Ellis, 318 F.3d 1023, 1025 (11th Cir. 2003); Harris v. Ivax Corp., 182 F.3d 799, 802 (11th Cir. 1999). The plaintiff's factual allegations are accepted as true. South Fla. Water Mgm't Dist. v. Montalvo, 84 F.3d 402, 406 (11th Cir. 1996). Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint. See id. However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. See id. at 408 n.10.

Upon thorough review of the record and a careful consideration of the parties' briefs and oral argument, we find no reversible error and affirm.

2

Davila, who was a pilot employed by Delta, injured his lower back in December, 1989 when he accidentally fell over a planter. He sought medical treatment for his injury, and was prescribed medication that disqualified him for flight duty. Nonetheless, he asserts that he chose to undergo an FAA physical examination on January 31, 1990 in an attempt to obtain a first-class medical certificate, which was necessary to qualify him for a return to flight status. On May 3, 1990, the FAA approved him for this certificate with the caveat that "[b]ecause of your history of low back condition, operation of aircraft is prohibited at any time new symptoms or adverse changes occur or for 12 hours after use of medication."

On July 19, 1990, Davila informed Delta of his flight eligibility. However, he said that he was still experiencing back problems and taking medication that prohibited him from piloting a commercial aircraft. Accordingly, on August 21, 1990, Delta approved him for disability payments for 6 months. On February 6, 1991, these benefits were extended for two additional months, i.e., until April 6, 1991. On March 19, 1991, Davila was reexamined by Dr. Jose Berrios, an Aviation Medical Examiner, who found that he was not qualified for a first-class medical certificate. Based on this finding, Delta's payment of disability benefits continued past April 6, 1991.

Davila alleges that on his own initiative he again sought a first-class medical certificate from Dr. Berrios on January 31, 1992. Davila says that although he was found to be qualified, Berrios told him that the certificate could not issue because of his previous denial and that the FAA would need to approve and issue the certificate. Importantly, Davila asserts that instead of marking the space on the relevant form corresponding to the disposition: "No Certificate Issued - deferred for further evaluation," Berrios's secretary accidentally checked the box corresponding to: "Has been issued medical certificate." Delta, by contrast, says that the secretary checked this box because Davila actually received the certificate. On June 30, 1992, the FAA approved Davila's first-class medical certification, but repeated its caveat concerning the operation of an aircraft during "flair-ups" or periods of medication. However, Davila asserts that he never physically received the certificate. He also says that his back problems (and his attendant need for medication) persisted.

Davila adds that in 1993 this precise sequence of events -- from his voluntary pursuit of a medical certificate to the secretary's typographical error -- was repeated, and that on October 12, 1993 the FAA advised him that he was flight-eligible. Davila asserts that he finally received a first-class certificate on

4

November 15, 1993, and that he notified Delta of its issuance on November 25, 1993.

After receiving this notification, Delta had Davila examined by its own physician, Dr. Michael Berry, who found him to be qualified for flight status. However, Berry further reported that Davila had withheld from Delta the fact that he had possessed a first-class medical certificate since May 3, 1990. Delta began an investigation into whether Davila had defrauded it since that time, and deferred his reinstatement pending the conclusion of its inquiry. Because he had not been restored to active flight status, Davila filed a grievance with Delta on August 24, 1994 (the "pay status grievance"), but that grievance was denied on October 28, 1994. Despite this denial, however, on May 17, 1995 Delta settled the grievance and awarded Davila back pay for the period between December 13, 1993 and May 17, 1995. Within one hour following the parties' agreement to this settlement, Delta fired Davila, justifying this action on the grounds that he had fraudulently obtained disability benefits since January 31, 1990.

Davila filed a grievance pertaining to his termination on May 18, 1995 (the "discharge grievance"), but this second grievance was denied on June 7, 1995. The following day Davila appealed his discharge to Delta's System Board of

Adjustment ("System Board"),[1] which ultimately found on April 18, 1997 that his firing was justified, as Delta had "submitted clear and compelling evidence that . . . Davila intentionally defrauded" the company. After the System Board issued its adverse ruling, Davila petitioned the district court pursuant to 45 U.S.C. §§ 153(q) and 184 to vacate its decision ("Davila I"), arguing that the Board had ignored the settlement agreement. Delta filed a motion to dismiss, which the court granted, reasoning that there are only limited grounds on which a RLA arbitration award may be vacated, and that none of those circumstances were present. The district court then said that Davila had "presented no grounds that would support the jurisdiction of this Court over this matter." Davila appealed the order of dismissal to this Court, and we issued a summary affirmance on the basis of the district court's opinion.

Subsequently, on July 31, 2000, Davila filed an EEOC charge in which he alleged that his termination violated the ADA. The EEOC dismissed Davila's charge on May 7, 2001, stating that it had been unable to find a violation. However, it did issue Davila a right to sue letter. Davila then filed this action in the state Circuit Court for the Seventeenth Judicial Circuit, in and for Broward County ("Davila II"). He advanced one claim sounding in breach of contract, in

---

[1]The System Board is composed in accordance with the Railway Labor Act, 45 U.S.C. § 184.

6

which he asserted that his discharge violated the grievance settlement agreement, and a second claim that Delta had violated the ADA by firing him. Delta promptly removed the action to the United States District Court for the Southern District of Florida, and in lieu of an answer, moved that court to dismiss both of Davila's claims on res judicata and timeliness grounds. It also argued that Davila's breach of contract claim was preempted by the RLA. The district court dismissed both claims, reasoning that they were precluded under the doctrine of res judicata.[2]

The doctrine of res judicata, or claim preclusion, "'will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same.'" Jang v. United Techs. Corp., 206 F.3d 1147, 1149 (11th Cir. 2000) (quoting Israel Disc. Bank, Ltd. v. Entin, 951 F.2d 311, 314 (11th Cir. 1992)). Importantly, this bar pertains not only to claims that were raised in the prior action, see id., but also to claims that could have been raised previously. Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1271 (11th Cir. 2002) ("'Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding'" (quoting Ragsdale

---

[2]Moreover, the district court denied Davila's request for leave to amend his complaint, reasoning that any such amendment would be futile, as no breach of contract claim would be cognizable for the reasons stated in its dismissal.

v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999))).  In determining whether the prior and present causes of action are the same, we must decide whether the actions arise "out of the same nucleus of operative fact, or [are] based upon the same factual predicate."  In re Piper Aircraft Corp., 244 F.3d 1289, 1297 (11th Cir. 2001) (quotation omitted), cert. denied TDY Indus., Inc. v. Kaiser Aerospace & Elecs. Corp., 534 U.S. 827, 122 S. Ct. 66, 151 L. Ed. 2d 33 (2001).

On appeal, Davila argues that res judicata does not bar either of his claims because the district court's dismissal in Davila I was not on the merits, as the court found that it lacked subject matter jurisdiction over the dispute.  In this vein, he says that the court lacked the power in Davila II to recharacterize its holding in Davila I as having been "on the merits."  He also argues that his ADA claim is not precluded because (1) lacking a right to sue letter, he could not have brought this claim in Davila I; and (2) it entails different elements than the breach of contract claim at issue in Davila I.

Of these assertions, only the first -- that the district court's dismissal in Davila I was not on the merits -- warrants any extended discussion.  Preliminarily, neither of Davila's latter two contentions regarding the applicability of claim preclusion are at all persuasive.  In Jang, we explicitly rejected the argument that

8

an ADA claim is not barred by res judicata where the plaintiff previously has brought a state law action prior to obtaining a right to sue letter. We said:

> Appellant asserts that he could not have raised his ADA claim in Jang I and thus res judicata should not bar his ADA claim in Jang II. Appellant explains that he attempted to obtain a "right to sue" letter before filing Jang I but that the Equal Employment Opportunity Commission (EEOC) and the Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) failed to transmit the letter. At least three other Circuits have rejected similar arguments and held that plaintiffs may not split causes of action to bring, for example, state law claims in one suit and then file a second suit with federal causes of action after receiving a "right to sue" letter. . . . We agree with these other Circuits . . . and hold that res judicata barred Appellant from splitting his causes of action and bringing his ADA claim after his first suit proceeded to a judgment on the merits.

206 F.3d at 1149 (internal citations omitted).

Moreover, there is no question that Davila's instant ADA claim shares precisely the same transactional basis as the claim he advanced before the System Board, i.e., his termination, and that as such he could have raised it in Davila I. Accordingly, the fact that the elements of proof in the context of the ADA claim differ from those at issue in Davila's breach of contract claim is not a basis on which we may hold res judicata to be inapplicable.

There is no question that the United States District Court for the Southern District of Florida is a court of competent jurisdiction over appeals from the System Board, that the parties were identical in both suits and that the prior and

9

present causes of action are the same, i.e., both stemmed from Davila's discharge and were or could have been brought in Davila I. This leaves only the question of whether Davila I represented a final judgment on the merits. More specifically, we must determine whether the district court dismissed Davila's initial action for lack of subject matter jurisdiction, which plainly is not an adjudication on the merits that would give rise to a viable res judicata defense. See Sewell v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 94 F.3d 1514, 1518 (11th Cir. 1996) ("'[O]rdinarily a judgment dismissing an action or otherwise denying relief for want of jurisdiction . . . does not preclude a subsequent action in a court of competent jurisdiction on the merits of the cause of action originally involved.'" (quoting 1B James W. Moore, et al., Moore's Federal Practice ¶ 0.405[5] (2d ed. 1996))); id. ("If the court in which an action is brought has no jurisdiction of the subject matter, the suit must be dismissed; '[i]n such cases, the dismissal is not a determination of the claim, but rather a refusal to hear it, and the plaintiff is free to pursue it in an appropriate forum.'" (quoting 1B James W. Moore, et al., Moore's Federal Practice ¶ 0.409[1.-2])); American Nat'l Bank v. FDIC, 710 F.2d 1528, 1535 (11th Cir. 1983) ("The earlier damages action, while arising out of the same transaction, was dismissed for lack of subject matter jurisdiction. Thus, no final judgment was entered on the merits of that action and res judicata may not apply

10

to bar claims that were or should have been raised in that action."). If, however, the district court adjudicated Davila's claims on their merits in Davila I, there is no question that claim preclusion bars both of Davila's instant claims.

In Davila I, the district court unquestionably couched its holding in jurisdictional terms. In particular, after noting the limited circumstances under which the System Board's determination could be vacated and finding that none of those circumstances were present, it concluded that it consequently lacked jurisdiction over the subject matter of the appeal. Put differently, the court said that because Davila was not entitled to relief from the Board's judgment, it did not have jurisdiction over his claims.

Although the district court thus employed "jurisdictional" language, it is equally plain as a substantive matter that the court did not actually conclude that it lacked the power to adjudicate the dispute before it. Indeed, it was only after reaching the very merits of Davila's challenge to the System Board's determination that the court found subject matter jurisdiction to be lacking. Specifically, the district court expressly noted that it could set aside that determination "[(1)] for failure of the [System Board] to comply with the requirements of this chapter[; (2)] for failure of the [Board's] order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction[;] or [(3)]

11

for fraud or corruption by a member of the [Board] making the order." 45 U.S.C. § 153(q). Of these circumstances, Davila argued only that the second was manifest, asserting specifically that because his first pay status grievance ultimately was resolved in his favor the System Board was barred by the CBA and principles of collateral estoppel from resolving his discharge grievance against him. Accordingly, he claimed, the Board lacked jurisdiction to make its April 18, 1997 finding that his firing was justified.

The district court squarely rejected Davila's collateral estoppel argument, saying that:

> Apart from other problems with Davila's argument [e.g., that Davila himself invoked the Board's jurisdiction over his second grievance], the two very different and separate grievances addressed two very different and separate problems. The pay status grievance claimed that Delta should have returned Davila to its payroll . . . once Davila presented a valid medical certificate on December 13, 1993. The discharge grievance, however, claimed that under the "just cause" provision of the CBA Delta should not have fired Davila. Not only did the two grievances address entirely different actions by Delta, but the remedies sought and received were also different.

Because collateral estoppel applies only to issues actually litigated in a previous action, see Agripost, Inc. v. Miami-Dade County, 195 F.3d 1225, 1230 n.11 (11th Cir. 1999), cert. denied, 531 U.S. 815, 121 S. Ct. 51, 148 L. Ed. 2d 20 (2000), the district court determined that the Board was not precluded from resolving the

12

latter grievance against Davila. The district court similarly found that although the CBA prevented the Board from disturbing a "previously settled" issue, the pay status grievance did not "settle" the propriety of his termination. Based on these conclusions, the court held that the System Board possessed jurisdiction over Davila's termination grievance, and that none of the circumstances identified in § 153(q) were present. Consequently, the district court found that it lacked any basis for disturbing the System Board's determination.

Simply put, this analysis can only be considered a decision on the merits. The court focused not on its ability to adjudicate the case before it, but instead on the substantive shortcomings in Davila's arguments. In other words, it is not that the court found that it lacked the power to hear Davila's claims; it is simply that the court found those claims to be unpersuasive. By contrast, if the district court truly had dismissed the case for lack of subject matter jurisdiction it could not legitimately have reached the merits of Davila's contentions, as narrow as those questions may have been. Indeed, the district court recognized as much in Davila II, in which it said that "in granting Delta's 1999 Motion to Dismiss, this Court stated that it lacked jurisdiction, the Court never discussed the issue and . . . now find[s] that this was an improper characterization of the dismissal. More accurately, the Court reviewed the decision of the Board on limited grounds and

13

affirmed . . . ." This explanation plainly is accurate, for the reasons set forth above. Nor is it an ex post alteration to, or "recharacterization" of, the Davila I holding; it merely is an accurate summary of the substance of the court's holding in that case.

More than one court of appeals has looked past the linguistic label employed by the district court in determining whether a dismissal transpired on jurisdictional grounds. See, e.g., Stewart v. U.S. Bancorp, 297 F.3d 953, 957 (9th Cir. 2002) (analyzing the substantive basis for the district court's dismissal, not merely considering that the district court had acted pursuant to Fed. R. Civ. P. 12(b)(6), in determining that a dismissal was a decision on the merits); Criales v. Am. Airlines, Inc., 105 F.3d 93, 97 (2d Cir. 1997) ("We recognize that the district court's dismissal of Criales's complaint arising from his untimely charge was styled as a dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that dismissals under Rule 12(b)(6) are generally considered judgments on the merits, unless the court specifies otherwise. Nonetheless, we would not permit the choice of labels to distort substance, especially where the consequence would be so drastic as to deprive a party of the opportunity to be heard.") (internal citation omitted). When we undertake such a substantive inquiry in this case, there can be no reasoned doubt that -- as the

14

district court itself recognized in <u>Davila II</u> -- the court did not base its dismissal on jurisdictional grounds. Accordingly, it was a final judgment on the merits, and it is entitled to preclusive effect. Thus, both of Davila's instant claims are barred by res judicata.[3]

**AFFIRMED.**

---

[3]Because this conclusion disposes of this appeal, we need not address Delta's arguments concerning preemption and timeliness.