[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 22, 2005
THOMAS K. KAHN
CLERK

—————————————

No. 04-10031

—————————————

D. C. Docket No. 03-01504-MD-DTKH

D. L. DAY et al.,

Plaintiffs,

NICK CEH,

Plaintiff-Appellant,

versus

JOHN T. TAYLOR,
E. JOSEPH SHOEN,
U-HAUL INTERNATIONAL, INC.,
REPUBLIC WESTERN INSURANCE COMPANY,
U-HAUL COMPANY OF PENNSYLVANIA, INC.,

Defendants-Appellees.

—————————————

No. 04-10671

—————————————

D. C. Docket No. 03-01504-MD-DTKH

D. L. DAY,

P. C. BOYLE,

                                        Plaintiffs-Appellants,

J. D. SWOPE, et al.,

                                        Plaintiffs,

                        versus

JOHN T. TAYLOR,
E. JOSEPH SHOEN,
U-HAUL INTERNATIONAL, INC.,
REPUBLIC WESTERN INSURANCE COMPANY,
U-HAUL COMPANY OF PENNSYLVANIA, INC.,

                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(February 22, 2005)**


Before BIRCH, KRAVITCH and CUDAHY[*], Circuit Judges.

KRAVITCH, Circuit Judge:

In this appeal we must decide whether the appellants, individuals who

rented U-Haul equipment for in-town moving, properly stated a claim for resale

_____

[*]Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

price maintenance against defendants, U-Haul International, Inc. ("U-Haul") and certain subsidiaries and officers of U-Haul, under Section 1 of the Sherman Act.

I.      Facts

The two appeals before us arise from three cases originally consolidated by the Judicial Panel on Multidistrict Litigation for pretrial proceedings in the Southern District of Florida.[1]  Each case is a class action alleging a federal antitrust claim for resale price maintenance against U-Haul International, Inc. ("U-Haul"). The Day and Ceh actions name only U-Haul as a defendant.  The Boyle action includes additional defendants U-Haul Company of Pennsylvania ("UHCP"), Republic Western Insurance Company ("RWIC"), E. Joseph Shoen ("Shoen"), and John T. Taylor ("Taylor").

The complaints' allegations are identical, and read as follows.  U-Haul rents its branded trucks, vans, and other moving equipment for both one-way and in-

---

[1]Plaintiffs Day and Boyle commenced the underlying action in this case on July 23, 2002, in the Southern District of Florida, as Day v. U-Haul International, Inc., No. 02-80689-CV (S.D. Fla.) ("Day").  Plaintiff Ceh commenced his action on October 4, 2002, as Ceh v. U-Haul International, Inc., No. 02-CV-01977 (S.D. Cal.) ("Ceh").  The JPML transferred Ceh to the Southern District of Florida by order filed March 5, 2003 for coordinated or consolidated proceedings.  The district court then consolidated the cases and ordered that the Day complaint was to serve as the operative complaint for purposes of the multidistrict litigation.  Later, on August 18, 2003, plaintiffs Day and Boyle from the Day action filed a second overlapping antitrust action, also in the Southern District of Florida, captioned Boyle v. Shoen, No. 03-80773-CV (S.D. Fla.) ("Boyle").  The Boyle complaint added additional defendants.  The district court consolidated Boyle with the existing multidistrict action.  The allegations in the three complaints that are relevant to this appeal, specifically those regarding agency, are identical.

town moving. U-Haul conducts its rental business through a network of about 1,200 company-owned rental centers and about 14,500 independent dealers. The independent dealers are typically gas stations, hardware stores, storage centers and other businesses, not owned by U-Haul, who rent U-Haul moving equipment to the public.

U-Haul fixes flat rates for in-town rentals based on the size of the truck rented. The plaintiffs allege that U-Haul conspired with the other defendants and the independent dealers to fix the prices at which U-Haul moving equipment is rented to the public for in-town rentals. In an effort to establish such a conspiracy, the plaintiffs each made the following allegation in their respective complaints:

> The independent dealers who contract with U-Haul to rent its Moving Equipment to the public typically conduct their own businesses, such as gas stations and hardware stores, and provide U-Haul Moving Equipment rentals and Coverage Sales pursuant to agreements with U-Haul and/or its subsidiaries. The dealers are separate and independent businesses that are neither owned nor employed by U-Haul, and such dealers have entrepreneurial independence from U-Haul, despite the fact that some agreements between U-Haul and the independent dealers purport to label the relationship as a form of agency. Notwithstanding such labeling, there is nothing about such relationships that supports such a legal conclusion. The independent dealers who rent U-Haul Moving Equipment to the public do not have the legal power to act for or on behalf of U-Haul or its subsidiaries and do not hold themselves out to the public as agents of U-Haul. Further, in its advertising and marketing efforts conducted for and/or together with the independent dealers, U-Haul does not indicate that such dealers are its agents. In fact, they are not agents of U-Haul and,

4

as indicated above, such businesses compete with U-Haul for the rental business of plaintiffs and members of the Antitrust Class.

The various defendants each moved individually to dismiss all the pending actions under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. With their motions, the defendants attached a copy of a standard form dealership contract between U-Haul and its independent dealers, on the basis that the contract was referenced in and central to the complaint. In their responses, the plaintiffs argued that the motions should be converted into motions for summary judgment under Rule 56(f) to enable them to respond properly, and sought to introduce several affidavits. The district court declined to convert the motions.

The district court dismissed the federal antitrust claims in the Day and Ceh actions against U-Haul on November 21, 2003.[2] Plaintiff Ceh filed a timely notice of appeal from the November 21 judgment. On January 12, 2004, the district court executed a judgment that extended the reasoning and outcome of the November 21 order to the Boyle action. Plaintiffs Boyle and Day filed timely notices of appeal from the January 12 judgment.

---

[2]The district court's November 21 order also dismissed actions brought by three other plaintiffs: Kennedy, Schenk, and Hicks. This court dismissed their appeals for lack of jurisdiction on April 7, 2004.

## II. Standard of Review

We review de novo a district court's dismissal of a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), construing the complaint in the light most favorable to the plaintiff and accepting as true all facts which the plaintiff alleges. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986). The district court may only grant a Rule 12(b)(6) motion to dismiss where it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985), a court may nonetheless dismiss a complaint on a dispositive issue of law. See Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. Analysis

### A. Motions to Convert to Summary Judgment

Appellants argue that the trial court should have converted the motions to dismiss into motions for summary judgment so that they might introduce affidavits and engage in discovery. Appellants claim that such evidence was necessary for

them to develop a record regarding the fact-intensive issue of whether the purported agency in the case was a sham.

The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint. Fed. R. Civ. P. 12(b). The appellants assert that the district court should not have considered the contents of the dealership contract without converting the motions to motions for summary judgment and thereby affording the appellants full discovery.

In Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002), we held that the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged. Id. Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in Horsley. Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999); see also In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970, 986 (9th Cir. 1999) (same).

Appellants claim that Horsley does not apply because the form dealership

7

contract is not central to their complaint. We disagree. The appellants' references to the dealership contract are a necessary part of their effort to make out a claim that the relationship between U-Haul and its independent dealers is not a genuine agency, but a sham agency. This issue is at the very heart of the appellants' resale price maintenance claim. Simpson v. United Oil Co., 377 U.S. 13 (1964). Because the contents of the dealership contract are likewise not in dispute, we affirm the district court's refusal to convert the defendants' motions to dismiss to motions for summary judgment.

### B. Motions to Dismiss

Section 1 of the Sherman Act proscribes any "contract, combination . . . or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. One type of § 1 violation is resale price maintenance, where a seller requires a buyer to charge a specific price or price level when that buyer re-sells the goods to another. The Supreme Court first declared resale price maintenance illegal per se in Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373 (1911). As described in Dr. Miles and subsequent cases, resale price maintenance agreements raise two primary policy concerns: they constitute "restraints of trade" because they may encourage the development of cartels among horizontal competitors, and they violate the common law rule against restraints on alienation of property. See

Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 725 (1988); Dr. Miles, 220 U.S. at 404-05.

It is well-settled that "genuine contracts of agency" do not constitute resale price maintenance because the "owner of an article" is permitted to "fix[] the price by which his agents transfer the title from him directly to the consumer." United States v. General Electric Co., 272 U.S. 476, 488 (1926). In the case of a genuine agency, there can be no combination and conspiracy in restraint of trade, and hence no Sherman Act violation. Id.

Appellants argue that the present case does not present a genuine agency, but rather a sham agency. The Supreme Court announced in Simpson v. United Oil Co., 377 U.S. 13 (1964), that a supplier may not avoid the proscription against resale price maintenance agreements simply by consigning inventory for resale to otherwise independent distributors and referring to them as agents.[3] Simpson makes clear that it is the substance of the relationship, not its form or description, that determines whether it is a genuine agency or a sham. Id. at 22.

Whether U-Haul's relationship with its independent dealers is a genuine

[3]Appellants argue that the "vastness" of a marketing network is a factor which calls for "stricter scrutiny" under Simpson. Appellants cite Greene v. General Foods Corp., 517 F.2d 635, 652-53 (5th Cir. 1975), to support this contention. Nothing in either Simpson or Greene suggests that the size of the distribution network calls for any heightening of the level of scrutiny this court applies. Furthermore, General Electric upheld the legality of a vast consignment system. 272 U.S. 476.

9

agency is a question of law which depends on the nature of that relationship. See 12 S. Williston, Williston on Contracts § 35:2 (4th ed. 1999). We are not bound by the legal conclusions in the complaint that the relationship is not an agency or that the independent dealers do not have "legal power" to act on behalf of U-Haul. We must look instead at the pleaded facts to determine whether Appellants' claim can withstand a motion to dismiss. See Davila v. Delta Air Lines, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal [for failure to state a claim]").

In Simpson, the gasoline retailers assumed virtually all the obligations of ownership of the gasoline in their possession, including the need to insure the gasoline against losses. 377 U.S. at 14. Under the terms of the consignment agreement, the oil company retained legal title to the gasoline until it was sold, but almost none of the obligations associated with such title. Id. The bald legal title was the only evidence of an "agency" relationship between the parties; all other factors pointed to the conclusion that the gasoline was actually sold to the retailer. It was on the basis of its retention of legal title that the oil company asserted its power to determine the retail price of the gasoline and to terminate its contract with the dealers if they refused to charge the contract price. Id. The Supreme

10

Court found that the resulting contract was coercive and that it removed all the dealers' power to act as independent businessmen. Id. at 21. By refusing to allow "clever draftsmanship" to characterize the transaction, the Supreme Court recognized the transaction for what it actually was—an attempt by a wholesaler to set retail prices after it sold gasoline to the retailer. Id. at 24. Based on this reasoning, the Court held that the relationship between the parties was not a genuine agency. Id.

Appellants argue that U-Haul's behavior here is like the oil company's behavior in Simpson. We disagree. In the present case, the facts pleaded in the complaint lead us to the conclusion that the relationships between U-Haul and its independent dealers were genuine agencies.

U-Haul agrees in the dealership contract to bear the risk of liability incurred by its independent dealers' U-Haul rental operations, and to assume responsibility for loss due to theft, vandalism, or other damage to U-Haul equipment in their possession. Appellants make much of the contract's exclusions for negligence; it is perfectly reasonable, however, for U-Haul to hold its dealers liable for damage to equipment in their possession when that damage is due to a dealer's own negligence. U-Haul also pays all taxes on the moving equipment. Because U-Haul continues to bear the costs of ownership of the equipment, it can fairly be

11

said to retain ownership of that equipment. In renting the equipment, therefore, the independent dealers are acting as U-Haul's genuine agents, making U-Haul's own property available to the public for rental. Ownership (whether actual or constructive as in <u>Simpson</u>) never passes to the independent dealer or the renter.

The Supreme Court's chief concern in <u>Simpson</u> was the coercive power wielded by the oil company. <u>Id.</u> at 21. The contract in <u>Simpson</u> was coercive in that termination of the contract would end a gasoline retailer's business, which was entirely dependent on a "lease agreement" with United Oil. 377 U.S. at 14. The gasoline retailers did not have any independent business substantial enough to survive loss of the contract. <u>Id.</u> at 21. In the case at bar, by contrast, U-Haul has no such coercive power over the independent dealers. These dealers are owners of gas stations, hardware stores, and other similar businesses who also rent U-Haul equipment to the public for additional income. Should the independent dealers cease to rent U-Haul equipment, they would not lose their entire business.

The appellants argue that the dealers' independence actually supports their case that there is no agency relationship. This argument is foreclosed, however, by a decision of this court's predecessor, <u>Hardwick v. Nu-Way Oil Co.</u>, 589 F.2d

12

806 (5th Cir. 1979).[4]  In <u>Hardwick</u>, we held that the plaintiff, a gas station operator, was an agent of the defendant oil company notwithstanding the fact that the operator was an independent businesswoman with respect to her convenience-store operation.  <u>Id.</u> at 811.

Based on the facts contained in the complaint in this case, we conclude that the relationships between U-Haul and its independent dealers were agency relationships.  As such, neither U-Haul nor any of its employees or subsidaries can be found liable for a violation of the Sherman Act.  The district court's dismissals of the Sherman Act claims against all the appellees are therefore AFFIRMED.

---

[4]In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court declared that all Fifth Circuit decisions handed down on or before September 30, 1981 are binding precedent in the Eleventh Circuit.