[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14416
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 29, 2012
JOHN LEY
CLERK

D.C. Docket No. 5:10-cv-00047-LGW-JEG

JOSEPH HARPER,

Plaintiff - Appellee,

versus

CHRIS PERKINS,
RODNEY COURSON,
JEREMIAH DAVIS,
MATT GOURLEY,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(February 29, 2012)

Before MARCUS, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Appellant-Defendants Chris Perkins, Rodney Courson, and Jeremiah Davis of the Coffee County Sheriff's Department, and Matt Gourley, a canine officer from Ware State Prison (collectively, "Defendants"), appeal from the district court's interlocutory order denying their motion to dismiss Plaintiff Joseph Harper's civil rights action alleging violations of 42 U.S.C. § 1983 and state law. Plaintiff's claims arose out of an incident in which he became paralyzed when the Defendants used a taser gun to take him into custody while he was standing in a tree. On appeal, the Defendants argue that the district court erred in denying them immunity from Plaintiff's claims because: (1) the force used by the officers was reasonable; (2) the rights violation Plaintiff asserts was not clearly established; (3) several of the Defendants did not personally participate in the discharge of a taser; and (4) official immunity protects the Defendants from Harper's state law claims. After careful review, we affirm.

We review <u>de novo</u> a district court's decision to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). <u>Am. United Life Ins. Co. v. Martinez</u>, 480 F.3d 1043, 1056-57 (11th Cir. 2007). The complaint is viewed in the light most favorable to the plaintiff, and all of the plaintiff's well-pleaded facts are accepted as true. <u>Id.</u> at 1057. Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint. <u>Davila v. Delta</u>

2

Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003). However, a district court may properly dismiss a complaint if it rests only on conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts. Id.

The complaint alleges the following facts. After midnight on May 26, 2008, police were called to Harper's home because of his "intoxicated behavior." Before the police arrived, Harper fled into the woods behind his house with a rifle. Harper set the rifle down "out of his reach" and climbed up the tree some distance "more than four feet." He stood upright in the tree. The Defendants were called in to search for Harper. When they found him in the tree, the Defendants each drew their weapons and, according to Harper, "repeatedly yell[ed]" conflicting instructions to come out of the tree and to show his hands. Harper decided to show his hands, but the Defendants allegedly continued issuing the same conflicting commands.

At that point, the Defendants agreed to use their taser guns to bring Harper down from the tree. Defendant Gourley attempted to taser Harper, but "because of a misfire, Plaintiff did not fall out of the tree." Defendant Davis then deployed a second taser, causing Harper to fall out of the tree. As a result of the fall, he became a paraplegic.

Thereafter, Harper filed this lawsuit to recover for his injuries. The Defendants moved to dismiss Harper's complaint, arguing for qualified immunity from his federal

claims, and official immunity from his state claims. The district court denied in large part their motions, and this timely interlocutory appeal follows.

First, we are unpersuaded by the Defendants' claims that the district court erred in denying them qualified immunity from Harper's § 1983 claim. Qualified immunity offers complete protection for a government official sued in his individual capacity if: (1) the official was "acting within his discretionary authority," and (2) his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation omitted); Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009). "Once an officer raises the defense of qualified immunity, the plaintiff bears the burden to show that the officer is not entitled to it." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2002).

There is no question that the Defendants were acting within their discretionary authority as law enforcement officers when they carried out their arrest of Harper. The parties dispute, however, whether the Defendants violated a clearly established constitutional right when they tasered Harper.

The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension. Graham v. Connor, 490 U.S. 386, 394-95 (1989); Mercado v. City of

4

Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). We analyze a claim of excessive force under the Fourth Amendment's "objective reasonableness" standard. Graham, 490 U.S. at 388. In order to determine whether the use of force is "objectively reasonable," we carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake" under the facts of the particular case. Id. at 396 (internal citations and quotations omitted). We measure the quantum of force employed against these factors -- the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight. Lee v. Ferraro, 284 F.3d 1188, 1197-98 (11th Cir. 2002). Notably, we consider the officers' actions "from the perspective of a reasonable officer on the scene, rather than through the lens of hindsight," Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1249 (11th Cir. 2004), recognizing that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

A right may be "clearly established" in three ways. First, the conduct may be "so bad that case law is not needed to establish that the conduct cannot be lawful."

5

Vinyard, 311 F.3d at 1350. In other words, this kind of case is one of "obvious clarity." Id. Second, "some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." Id. at 1351. If a broad statement of legal principle is to "establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id. Third, where no broad statements of legal principle are available, a right may be clearly established in "precedent that is tied to the facts." Id. (emphasis omitted). In this situation, "a case that is fairly distinguishable from the circumstance facing a government official cannot clearly establish the law for the circumstances facing that government official." Id. at 1352.

Because we are reviewing this case at the motion to dismiss stage, we are required to view the complaint in the light most favorable to the plaintiff, and to accept all of the plaintiff's well-pleaded facts as true. Am. United Life Ins. Co., 480 F.3d at 1056-57. With this standard in mind, we conclude that the Defendants are not entitled to qualified immunity at this point. As for the first factor of the excessive force test -- the severity of the plaintiff's crime -- we have little basis to assess it,

6

because he did not specify his crime in the complaint, other than to say that the Defendants were called to his home because of his "intoxicated behavior."

Based on this same complaint, however, the remaining factors weigh in Harper's favor. As for his threat to the safety of the officers, Harper alleges that he was unarmed, he was standing in the tree showing his hands, and was afraid for his life. While the Defendants argue that Harper could have jumped on them from the tree or jumped to retrieve his gun and start shooting at them, it is difficult to construe the allegations in this way, given that he alleges that he was standing with his arms up in the tree and that his rifle was out of reach before he climbed in the tree. There is also no argument at this point that Harper was acting belligerently or posing a threat to anyone else.

As for whether he was resisting arrest, he alleges that at the time of the tasing, he was unarmed, had his hands up in an attempt to comply with the Defendants' conflicting commands, did not attempt to flee, and was surrounded by the four officers standing at the base of the tree and pointing their guns at him. Although the Defendants contend that their commands were not conflicting and that he was refusing to comply with clear commands, the allegations -- that he could not climb out of the tree without using his hands -- paint a different picture.

7

Moreover, the quantum of the force used allegedly was substantial. As Harper alleges, tasers are "designed to cause significant, uncontrollable muscle contractions capable of incapacitating even the most focused and aggressive combatants," and the Defendants knew it would incapacitate him. Harper further alleges that "[i]t was and is clearly obvious at all relevant times that a person using his hands, feet, arms and legs to stand in a tree, who becomes incapacitated by significant, uncontrollable muscle contractions, will likely fall from the tree[,] will lack the ability to protect himself from falls by any natural movements such as putting out his arms to protect himself from the fall and may suffer a broken neck, broken back, death or other very serious injury." While the Defendants point to case law suggesting that tasers emit a moderate, non-lethal level of force, none of the cases deal with its use on a suspect standing with his hands in the air and at least four feet off the ground in a tree, which clearly exacerbated the risk of serious injury resulting from the application of the taser.[1] Indeed, the Defendants concede that the extent of injury that Harper suffered -- paraplegia -- weighs in his favor. Further, the Defendants' claim that the force was

---

[1] For example, in <u>Draper v. Reynolds</u>, 369 F.3d 1270 (11th Cir. 2004), the police used a single taser shock against a "hostile, belligerent, and uncooperative" suspect who was standing on the ground. <u>Id.</u> at 1278. The taser shock did not cause any serious injury and left the suspect "coherent" and "calmed" shortly after the shock. <u>Id.</u> We observed that under the facts of the case, "[t]he single use of the taser gun may well have prevented a physical struggle and serious harm to either [the suspect] or [the officer]," and, therefore, "[u]nder the 'totality of the circumstances,' [the officer's] use of the taser gun did not constitute excessive force." <u>Id.</u>

justified because they could not complete the arrest without the use of the taser or their firearms is refuted by the allegations here -- that Harper was up in a tree receiving conflicting commands -- which suggest that there were other options, like giving him clear instructions, to effectuate the arrest. In short, based on the allegations that Harper was unarmed, showing his hands, in a tree at least four feet off the ground, the Defendants' use of the taser, resulting in Harper's paraplegia, was disproportionate to any threat posed and unreasonable under the circumstances.

Turning to the "clearly established" inquiry, Harper claims that this case is one of "obvious clarity," such that case law is not needed to demonstrate that the Defendants' behavior is clearly unlawful. We applied the "obvious clarity" test in Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009), where we asked "whether it would be clear to every reasonable officer, even in the absence of case law, that the force used . . . was excessive under the circumstances." In Oliver, we found that the plaintiff had met the "obvious clarity" test where the plaintiff was not accused of or suspected of any crime, was not acting belligerently or aggressively, complied with most of the officers' directions, and made no effort to flee, the officer's use of the taser at least eight and as many as eleven or twelve times over a two-minute span without attempting to arrest or otherwise subdue the plaintiff. Id. at 908. We concluded that on these facts, the force "was so plainly unnecessary and

9

disproportionate that no reasonable officer could have thought that this amount of force was legal under the circumstances." Id. at 908.

While Oliver involved a different set of facts, and indeed, was decided after the events underlying Harper's case, we nevertheless agree with the district court that Harper has met the "obvious clarity" test based on the very limited facts before us. Indeed, accepting the complaint's facts as true, we conclude that the Defendants' conduct was unlawful with "obvious clarity": They shot a suspect with a taser gun, which they allegedly knew would incapacitate him, when the suspect (1) was at least four feet up in a tree with his hands raised, (2) posed no threat to their safety or the safety of others, (3) had no chance, and did not attempt, to flee, and (4) merely put his hands in the air in compliance with the instructions of at least one officer. In determining that the force was obviously and clearly excessive, we emphasize the peculiar facts of this case -- among other things, that a taser was used on a person standing with his hands in the air at least four feet off the ground in a tree.

Next, we are unpersuaded that the Defendants are shielded from liability because Defendants Perkins, Courson, and Gourley did not personally participate in the discharge of the taser that incapacitated Harper, and because Defendant Davis did not use the taser on Harper until after Defendant Gourley attempted to use his and it misfired. In Oliver, we found that under the facts alleged in the complaint, both

"Officers Fiorino and Burk violated the Constitution" by applying excessive force, even though it was not alleged that Officer Burk himself had actually fired the taser. 586 F.3d at 903, 907. Although we never explicitly addressed the issue, it is implicit in our holding that there are circumstances in which an officer can be held liable for a constitutional violation arising out of an unlawful tasing, even where that officer did not personally fire a taser gun. This is especially applicable in this case, where Harper's complaint alleges that the Defendants knew and intended that the use of the taser would incapacitate him, and the "Defendants all concurred through their speech and conduct that they should use Tasers to bring Plaintiff down from the tree." Moreover, as Defendant Gourley acknowledges, a police officer has an obligation to intervene to prevent or stop the use of excessive force when he witnesses it and is a position to intervene. Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000). Thus, because all of the Defendants were together and able to intervene at the time the taser was discharged, they are not shielded from liability at this stage of the case.

Finally, we are unpersuaded by the three Sheriff's Department Defendants that they are entitled to official immunity on Harper's state law claims. Under Georgia law, public officials are generally entitled to official immunity from suit unless they acted with "actual malice or with actual intent to cause injury" in the performance of

their official functions. Ga. Const. Art. I, § II, ¶ IX(d). "[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful act [and] [s]uch act may be accomplished with or without ill will and whether or not injury was intended." Adams v. Hazelwood, 271 Ga. 414, 415 (1999). As a corollary, an officer effecting a lawful arrest may not use more force than is "reasonably necessary in the circumstances." Smith v. Holeman, 212 Ga. App. 158, 160 (Ga. App. 1994).

We recognize, as the Defendants argue, that we cannot rely on Harper's legal assertions of actual malice in the complaint. Nevertheless, we believe there are enough factual allegations of actual malice to survive the motion to dismiss. For example, Harper alleges that the Defendants knew, and intended, that their use of the taser on Plaintiff would incapacitate him, and that it was "clearly obvious" that once incapacitated, he likely would fall from the tree, be unable to protect himself, and "may suffer a broken neck, broken back, death or other very serious injury." Harper also alleges that he posed no risk to the officers or others and was not evading arrest. We believe that these allegations -- asserting that the Defendants intended to use a taser gun on Harper, with clearly injurious consequences, and without any justification for doing so -- are sufficient to describe a deliberate intention to do a wrongful act. The complaint therefore, at this stage of the case, alleges actual malice

under Georgia law. Accordingly, the district court did not err in denying the Defendants' motions to dismiss on the basis of qualified and official immunity.

**AFFIRMED.**